[No. 10017.   Department One.   March 22, 1912.]

ALBERT DALTON et al., Respondents, v. SELAH WATER
Users' ASSOCIATION, Appellant.[1]

WATERS AND WATER COURSES—IRRIGATION CANAL—DAMAGES FROM
FLOODING—NEGLIGENCE—EVIDENCE—RES IPSA LOQUITUR.   A finding
of negligence in attempting to repair an irrigation canal on a hill-
side, by putting in plank side lining to protect a weakened side, is
sustained, and the doctrine of res ipsa loquitur applies, where it
appears that a mass of earth 12 to 16 feet in thickness and 170 to
180 feet in length, broke from the lower side of the canal, that a
few days before the break, defendant undertook to put in a side
lining of planks, tamped with a four-inch space of loose earth, that
a witness found the earth washed out and soft and notified the de-
fendant that the bank would break, but defendant paid no heed to
the warning, and it appears that the court viewed the premises and
the break was due to the force of the water and condition of the
bank, rather than any outside intervening cause.

Appeal from a judgment of the superior court for Yakima
county, Grady, J., entered July 6, 1911, upon findings in
favor of the plaintiff, in an action for damages for flooding
occasioned by the breaking of an irrigation ditch.   Affirmed.

[1]Reported in 122 Pac. 4.

*Davis & Morthland,* for appellant.

*Snively & Bounds,* for respondents.

Gose, J.—Action for damages. Judgment for plaintiffs. Defendant appeals.

The facts, in brief, are as follows: On the 10th day of August, 1910, the appellant owned and operated a canal, in Yakima county; which carried a large volume of water which was used for irrigation purposes. The respondents owned land about one mile from the canal. The elevation of the canal is 300 or 400 feet above the respondents' land. On the night of August 10, a mass or block of earth, twelve to sixteen feet in thickness and 170 to 180 feet in length, broke from the lower side of the canal and swung out like a gate, leaving an opening about twenty-five feet in width, through which the waters of the canal escaped and flowed over and upon the respondents' land, causing the loss for which a recovery is sought in this action.

The appellant had put side lining at the point of the break, along the lower bank of the canal, a few days before the break occurred. The canal at this point was cut into the side of a hill. The hill formed the upper bank, and the dirt taken from the cut formed the lower bank or side of the canal. In putting in the side lining, a trench was made, twelve to fourteen inches in width and eighteen inches in depth. Planks four inches square were placed four feet apart in the bottom of the trench against the lower side of the canal. To these were nailed rough boards sixteen feet in length, twelve inches in width, and one and one-half inches in thickness, and extending from the bottom of the trench to the top of the lower bank of the canal. The dirt taken from the trench was then tamped on the inside of the lining, and from time to time dirt was thrown into the four-inch space between the upright timbers and the lower bank of the canal, and puddled. On the question of negligence, the lower court found:

"That prior to the 10th day of August, 1910, the defend-

ant attempted to repair a portion of the said ditch by clean-
ing out the bottom thereof and by constructing side-lining
along a portion of one of the sides thereof; that the said ditch
at the point where it broke, as hereinafter referred to, was
constructed along the side of a hill; that in putting in said
side-lining, a trench was dug along the bottom and at the
outer edge of the ditch from eighteen inches to three feet in
depth to hold the side-lining; that the said trench was dug
in such a negligent manner, and the side-lining so negli-
gently placed therein, that the water, when turned into said
ditch, softened the soil in the bottom and in said trench and
the outer side of said ditch that it would not hold the water
when it was turned in, and the side split off and allowed the
whole volume of water in said ditch to escape and run down
on to the premises of the plaintiffs; that the weak and softened
condition of the bank of said ditch was called to the attention
of the defendant prior to said break, and the defendant had
full knowledge of such condition; . . ."

The appellant contends, that this finding is not supported
by the evidence; that there is no evidence of negligence, and
that the doctrine of *res ipsa loquitur* cannot be applied to
cases of this character.    Before considering this question, it
seems proper to say that the findings recite that the trial
judge, upon the stipulation of the parties, viewed the canal
at the point where the break occurred, and further recite that
the findings are based upon the evidence and the view made
by the court.

We think there is ample evidence to sustain the finding.    It
would seem that nothing but a convulsion of nature or the
negligence of the appellant could cause such a mass of earth
to break away from the canal.    A witness for the respondents,
Mr. Baird, however, testified that he was at the point of the
break two or three days before the break occurred; that he
stepped upon the bank where they had placed the side lining,
and that he "just simply dropped down; right through into
the side lining; the bank of the side lining and the main bank:
It seemed to be a lot of gravel thrown on top, and under-
neath it was nothing.    It seemed to be all washed away—

soft; and I just went right down. . . . Well, I went clear
over my knees." He further stated that the place where he
stepped was between the side lining and the lower bank of the
canal, and that the bank broke a few feet above this point.
He testified further that he told the appellant's superintend-
ent of the condition of the bank; that it was "going to
break," and said to him that he should give it his·attention;
and that the superintendent answered, "Who is running that
ditch?" The break occurred the first or second night fol-
lowing this communication. The superintendent testified
that he did not remember the conversation. This testimony,
when considered with the physical facts and the view made
by the court, clearly sustains the finding. It seems proper
to say that the court viewed the break some nine months
after the accident happened. The physical facts were, how-
ever, still present. The appellant had then put in a flume
at the point where the earth broke away from the canal. The
appellant seeks to exculpate itself from the charge of negli-
gence by testimony that the lining was properly installed,
that the canal was patrolled daily, and that the patrolmen
did not discover any indication of infirmity in the bank
where the break occurred. This does not exonerate the ap-
pellant from liability. The evidence is that the water could
pass through the space between the horizontal boards. If
the witness Baird observed and foretold the danger, the pa-
trolmen could have seen it had they given it a reasonable in-
spection.

If the break had been of a character that it could reason-
ably be said to have been caused by the recent burrowing of
an animal, or by a trespasser, or if the manner and circum-
stances of the accident were consistent with reasonable care
upon the part of the appellant, and there was no evidence of
negligence other than the happening of the accident, a dif-
ferent question would be presented. We think the circum-
stances are such as to make the negligence of the appellant
a legitimate if not an irresistible inference.

We think the better rule is that the doctrine of *res ipsa loquitur* applies in cases of this character.    In *Lynch v. Ninemire Packing Co.*, 63 Wash. 423, 115 Pac. 838, in speaking of this doctrine, it is said:

"The maxim of *res ipsa loquitur* may be termed a rule of evidence, to the extent that, when properly applied, it raises a presumption of negligence sufficient to make a *prima facie* case on behalf of the plaintiff, and call for an explanation from the defendant."

In *Griffen v. Manice*, 166 N. Y. 188, 59 N. E. 925, 82 Am. St. 630, 52 L. R. A. 922, it is said:

"It is not the accident, but the manner and circumstances of the accident, that justifies the application of the maxim."

See, also, 3 Farnham, Waters and Water Rights, § 134; 6 Thompson, Negligence, § 7636; 2 Cooley, Torts (3d ed.), p. 1425; *City Water Power Co. v. City of Fergus Falls*, 113 Minn. 33, 128 N. W. 817; *Gould v. Winona Gas Co.*, 100 Minn. 258, 111 N. W. 254, 10 L. R. A. (N. S.) 889.

This maxim, like all other rules of evidence, must be applied with reference to the facts of the particular case.    The breaking of the banks of a canal is but a circumstance, and its probative force must be determined from all the facts and circumstances surrounding its occurrence.

Where the trial judge views the premises upon the stipulation of the parties, it of course becomes his duty to weigh the evidence in the light of all pertinent facts that fall within his observation; and in such cases, if there is a substantial conflict in the testimony, this court would be reluctant to interfere with his finding.

Affirmed.

Dunbar, C. J., Chadwick, Crow, and Parker, JJ., concur.