[No. 38272.     En Banc.     April 20, 1967.]

DONALD C. LOCKHART, *Appellant,* v. CONRAD BESEL *et al.,*
*Respondents.**

*Neill, Aitken & Schauble,* by *Albert J. Schauble,* for appellant.

*Richard R. Loucks,* for respondents.

*Sam L. Levinson* (of *Levinson & Friedman*), *James McCutcheon* (of *McCutcheon & Groshong*), *John J. Sullivan* (of *Sullivan, Redman & Winsor*) and *Leon L. Wolfstone* (of *Wolfstone & Panchot,* amici curiae.

HUNTER, J.—This is an action for the wrongful death of a 17-year-old boy instituted by his father, Donald C. Lockhart, plaintiff (appellant), against the defendants (respondents), Conrad Besel and his wife, and their son, Roland L. Besel.

The deceased, Richard E. Lockhart, was a student in his senior year in St. John High School. He resided with his

*Reported in 426 P.2d 605.

parents on a small farm near Ewan, Washington, where they were engaged in raising hogs. About 3 weeks prior to Richard's death his parents had purchased for him an Indian motorcycle for the purpose of going to and from school. On November 3, 1963, about 4:45 p.m., Richard was returning home after repairing an oil leak on his motorcycle at his uncle's place in St. John. About 3½ miles east of St. John, on Highway No. 18, he met a car approaching from the opposite direction driven by his aunt, Teressa Black. Roland L. Besel was following the Black car in the family car of his parents, when he attempted to pass the Black car on a curve, whereupon he met Richard on his motorcycle in Richard's lane of travel. A collision occurred and Richard died from the resulting injuries.

The plaintiff alleged that the defendants' car was operated in a negligent manner, which was the proximate cause of his son's death. The defendants denied their negligence and affirmatively alleged contributory negligence of the plaintiff.

The evidence shows that the deceased was an outstanding boy in the community; he was a good student, a hard worker, an athlete, and a leader in his class. He weighed about 170 to 180 pounds. He was interested in pharmacy and intended entering college, but planned to stay home for a year or two after graduation from high school to help his father in the operation of his hog ranch, and to complete the family home. He had learned to operate a self-propelled combine and was capable of making $30 a day for some 60 days during harvest. In addition to helping his father in his hog business, he assisted him in his janitorial work at the school in Ewan.

After Richard's death, his father had to give up his $3,000-a-year job at the Ewan school, and he developed reverses in his hog business which he also discontinued.

At the conclusion of a jury trial, the jury returned a verdict in favor of the plaintiff for $6,363.07, of which $1,863.07 was for medical and funeral expenses and property damage as stipulated to in the record. The plaintiff

moved for a judgment notwithstanding the verdict, increasing the amount of the verdict, or in the alternative for a new trial, which was denied. The plaintiff appeals.

The plaintiff contends the trial court erred in omitting from its instruction No. 14 on damages the following:

> You may also consider the loss of companionship to the parents occasioned by the death of said child.

The plaintiff acknowledges that the proposed instruction departs from the present Washington rule in this regard, but argues that such an instruction is necessary in order to compensate a parent for the real loss of his child. The present rule was set forth by the trial court's instruction No. 14:

> If you decide from the evidence that the plaintiff is entitled to damages for the loss of his minor child, you should give consideration to the following as the measure of damages to be awarded. You should determine the value of the services of said child from the date of the death until he would have attained the age of majority, less the cost to his parents of his support and maintenance during this interval. In determining the value of the deceased child's services, you must take into consideration the child's health, his mental and physical capacity, both present and prospective, as well as the situation of his parents. In determining the value of the deceased child's services, you should not consider any distress, sorrow or mental suffering of the parents caused by the death of said child.

The plaintiff argues that the present rule is unjust and archaic, that it fails to recognize that economic benefit from children is no longer a matter of parental concern, and that the modern parental attitude is one of sacrifice for the success of children. The plaintiff urges that we should therefore extend the rule, permitting the jury to consider the loss of companionship in evaluating the damages for the wrongful death of a minor child.

The limitation of damages to a parent for pecuniary loss of a child's services is predicated upon a rule announced by this court 74 years ago in the case of *Hedrick v. Ilwaco Ry. & Nav. Co.*, 4 Wash. 400, 30 Pac. 714 (1892). We there said:

It is settled beyond controversy that, at common law, no civil action could be maintained for damages resulting from the death of a human being. But that defect of the common law has been obviated by statute in the several states analogous to the English statute, commonly known as Lord Campbell's act (9 and 10 Vic. c. 93), though often varying more or less from its provisions, especially as to the party entitled to maintain the action. The object and purpose of these statutes is to provide a remedy whereby the family or relatives of the deceased, who might naturally have expected maintenance or assistance from the deceased, had he lived, may recover compensation from the wrongdoer commensurate with the loss sustained. . . .

. . . .

A parent at common law could maintain an action for damages for loss of services of his minor child from the time of the injury until death, where death did not immediately follow the injury; and the object of the statute is to create a new and independent right of action for the loss of services subsequent to the decease of the child, which did not exist at common law. . . . The measure of damages in such cases is the value of the child's services from the time of the injury until he would have attained the age of majority, taken in connection with his prospects in life, less the cost of his support and maintenance. To this may be added in proper cases the expense of nursing and medical treatment, and in some jurisdictions even funeral expenses.

From the inception of the rule, *supra*, the argument has been advanced that in the absence of the proof of special pecuniary damages, it is speculative to say that the earnings of a minor child exceed the cost of his support and maintenance during his minority; that a judgment or verdict for more than nominal damages should not be sustained. We have answered this argument, however, by following the majority rule in other jurisdictions which is that such statutes contemplate a recovery to the parents for more than nominal damages in the case of wrongful death of their minor child. This construction placed upon our statute, RCW 4.24.010, is clearly enunciated in *Sweeten v. Pacific Power & Light Co.*, 88 Wash. 679, 683, 153 Pac. 1054 (1915):

In the nature of the case, direct evidence of specific pecuniary loss would be impracticable, not to say impossible. To hold that, without such direct evidence, no recovery beyond nominal damages could be had, would render nugatory the statute permitting a recovery for wrongful death, Rem. & Bal. Code, § 184 (P. C. 81 § 17), as applied to the loss of a child of tender years. *Ihl v. Forty-Second St. etc. R. Co.*, 47 N. Y. 317, 7 Am. Rep. 450.

The difficulty in supporting judgments for more than nominal damages in these cases, reflected by the changing conditions of our economy, was recognized affirmatively by this court in *Skeels v. Davidson*, 18 Wn.2d 358, 139 P.2d 301, 149 A.L.R. 225 (1943). In that case the jury awarded the parents $1,000 exclusive of funeral expenses for the wrongful death of their child, 6-½ years of age. The evidence showed that the child was retarded and the parents as a result thereof incurred substantial expenses for his care and maintenance. We observed at 367:

> The cost of his maintenance, even up to the time of his very death, must have been great. Among other things, it incidentally appears that he had been under the care of one private physician alone for a period of two years. It is argued, and with good reason, that, by any conceivable pecuniary standard, the child was definitely shown to be a liability, and it is stressed that the jury was correctly instructed that it could not consider the distress, sorrow, or mental suffering of its parents.

We then stated:

> *There is, perhaps, no other phase of the law of damages which is in so unsatisfactory a state as that concerned with the rule governing damages for the wrongful death of a child, under a statute such as our own which creates the right of action, but prescribes no measure of recovery.* (Italics ours.)

We later observed at 369:

> It is a matter of common knowledge that, previous to the present war at least, such a computation as the jury was directed to make would result in no damages, except in the cases of a few gifted children employed in the entertainment field. In dealing with the subject, McCormick, in his recent work on Damages, says, on page 353:

"According to the estimate of certain distinguished actuaries, the cost of raising a child to age 18, in an average family, is \$7,425."

In *Skeels* we recognized a parent's right to recover what was then a substantial amount for the death of a child who would always have been a hopeless and expensive burden. While the court did not put it into words, any recovery could be justified only on the basis of loss of companionship.

Since the *Skeels* case in 1942, economic conditions and our way of life have so significantly changed that to say the pecuniary value of the loss of a minor child's services over and above his cost of support and maintenance, except in rare cases, is not a pure fiction can no longer be ignored. We must now conclude that to award more than nominal damages in every case where we limit damages to the loss of a minor child's earnings above the cost of his support and maintenance, is an affront to reason and logic.

■■ We adhere to our prior construction of the statute, RCW 4.24.010, *supra,* that the legislature intended that recovery for more than nominal damages should be allowed in these cases: *Atrops v. Costello,* 8 Wash. 149, 35 Pac. 620 (1894); *Atkeson v. Jackson Estate,* 72 Wash. 233, 130 Pac. 102 (1913); *Sweeten v. Pacific Power & Light Co., supra; Skeels v. Davidson, supra.* However, to give effect to this legislative intent, the measure of damages which we have heretofore allowed under RCW 4.24.010, *supra,* must be extended. We hold that the measure of damages under RCW 4.24.010, *supra,* should be extended to include the loss of companionship of a minor child during his minority without giving any consideration for grief, mental anguish or suffering of the parents by reason of such child's wrongful death. This rule is consistent with the better reasoned cases and the modern trend in other jurisdictions of this country. *Fussner v. Andert,* 261 Minn. 347, 113 N.W.2d 355 (1961); *Zeller v. Reid,* 38 Cal. App. 2d 622, 101 P.2d 730 (1940); *Gardner v. Hobbs,* 69 Ida. 288, 206 P.2d 539, 14 A.L.R.2d 478 (1949); *Van Cleave v. Lynch,* 109 Utah 149, 166 P.2d 244 (1946); "Measure of Damages For Wrongful

Death of a Minor Child," 18 Wash. & Lee L. Rev. 277 (1961).

All cases heretofore decided by this court inconsistent with our holding in this case are hereby overruled.

The plaintiff, having raised the issue of the extension of the rule for the measure of damages under RCW 4.24.010, *supra*, in both the trial court and on this appeal, is entitled to the benefit of the new rule we have announced in this case and should be afforded a new trial.

For the guidance of the court on retrial we will consider the plaintiff's further contention that the trial court erred in failing to include the following in the instruction on damages to the jury:

> However, you may award the parents substantial damages upon a showing that the death of their child was caused by the negligence of the defendants and it is not necessary that the plaintiff prove by direct evidence any specific pecuniary loss.

■ Plaintiff contends that the use of the word "substantial" is proper in that we have used comparable language in our previous opinions. The use of the word in prior wrongful death cases, as in *Skeels v. Davidson, supra,* was not in the context of an approved instruction, but rather in the support of jury verdicts that had been challenged as excessive, and to justify the legislative intent that the plaintiff be permitted to recover more than nominal damages in all wrongful death cases. In any event, since we have given effect to this legislative intent by now permitting the jury to consider loss of companionship of a minor child in such actions, there is no necessity for the proposed instruction, and to give it at the retrial of this case would be improper and prejudicial to the defendants.

The judgment of the trial court entered upon the jury verdict is reversed, and the cause is remanded for trial on all issues consistent with our holding in this opinion. Costs will abide the final determination of the cause.

FINLEY, C. J., HILL, DONWORTH, WEAVER, ROSELLINI, HAMILTON, and HALE, JJ., concur.