[No. 38899. Department One. October 13, 1967.]

GRAYSON CLARK, JR., *et al., Respondents,* v. ICICLE IRRIGATION DISTRICT, *Appellant.**

*Reported in 432 P.2d 541.

*Hughes & Jeffers* and *W. Gordon Kelley,* for appellant.

*Charles W. Cone,* for respondents.

HILL, J.—On February 27, 1965, the bank of an irrigation ditch, owned and maintained by the defendant, had broken or washed out, sending a large volume of water and mud approximately a hundred yards down a steep hill and against and through the house in which Grayson Clark, Jr., his wife, and their 20-month-old son were sleeping. Clark and his wife escaped with their lives. The child was killed; the room he occupied being filled almost to the ceiling with mud, dirt and debris. Even trees in the path of the mud and water had been carried down the hill and into the house.

The Clarks brought this action against the Icicle Irrigation District to recover damages in the sum of $30,000 for the death of the child (divided $15,000 for the loss of companionship, and $15,000 for the loss of his services until he attained 21 years of age). Such an action by the parents for the death of a minor child is authorized by RCW 4.24.010.[1] They also asked $4,839.87 for the loss of personal property (furniture, fixtures, appliances, and clothes); $500 for injuries sustained by Mr. Clark, and $195 for the child's funeral expenses. They secured a judgment for $33,025, which was segregated by a special finding of the jury into $30,000 for the death of the child (which under the pleadings and the instructions must be divided $15,000 for the loss of companionship; $15,000 for the loss of services), together with $195 for the funeral expenses and $2,830 for property damage.

---

[1] "A father, or in case of his death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a minor child, or a child on whom either is dependent for support, and the mother for the injury or death of an illegitimate minor child, or an illegitimate child on whom she is dependent for support." RCW 4.24.010

An additional sentence was added to this section by Laws of 1967, Ex. Ses., ch. 81. See footnote 8.

The issues raised on this appeal are: liability, and if there is liability, whether the $30,000 verdict for the death of the child is excessive.

The house occupied by the Clarks belonged to the irrigation district, which had employed Clark until the preceding November. At the time of the slide the season for irrigating was over and, supposedly, there was no water in the ditch except such as came from rain and snow melting under the rain and a warm Chinook wind.

No one could say with certainty what caused the section of the bank of the ditch on the downhill side to go out and come cascading down the hill against and through the house occupied by the Clarks. The jury may well have reached its decision concerning liability on the basis of the res ipsa loquitur instruction which read:

You are instructed that when a thing which causes an injury to another is shown to be under the management and control of the person charged with negligence in operation or maintenance of such thing, or in the failure to keep it in a reasonably safe condition, and if it [is] shown that an accident happened which, in the ordinary course of things, does not happen if those in charge of the management and maintenance of the thing exercise reasonable care, then the happening of the accident alone affords reasonable evidence in the absence of explanation by the person charged with negligence that the accident arose from the want of reasonable care on the part of such person. (Instruction No. 7)[2]

Although the defendant excepted to the giving of any res ipsa loquitur instruction, no error is assigned on this appeal either to the giving of the instruction or to its wording.

---

[2]We desire to make it indubitably clear that, by quoting it, we are not approving the form of this instruction. We particularly disagree with the statement that "the happening of the accident alone affords reasonable evidence . . . that the accident arose from the want of reasonable care." We have been at some pains to make it clear that the happening does not afford "reasonable evidence"; that it does no more than permit the jury to infer, though it is not required to so infer, that the defendant or its agents were at some point negligent.

See recent discussion in *Pederson v. Dumouchel, ante* p. 73, 431 P.2d 973 (1967).

■ Cases involving breaks in irrigation ditches seem particularly appropriate for a proper res ipsa loquitur instruction. This case involves such an occurrence as would not, in the course of ordinary experience, occur without negligence. Control and management of the ditch was in the defendant, and it had superior means of information concerning the circumstances surrounding the break. All the requisites for the application of res ipsa loquitur are present. We approved its use in the similar case of *Dalton v. Selah Water Users' Ass'n*, 67 Wash. 589, 122 Pac. 4 (1912).

The plaintiffs presented evidence of the defendant's failure to remove obstructions from the ditch and a spillway. That evidence failed, however, to establish that such failure was the cause of the damages sustained.

■ However, the fact that the plaintiffs may have attempted, but failed, to prove that certain specific claimed acts of negligence were the proximate cause of the break in the bank of the ditch, does not prevent the application of the doctrine of res ipsa loquitur. As we said in *Vogreg v. Shepard Ambulance Serv., Inc.*, 47 Wn.2d 659, 663, 289 P.2d 350 (1955),

> If the doctrine applies, . . . the plaintiffs are not to be penalized by an honest, but perhaps unsuccessful, effort to put in evidence whatever inadequate information they have concerning the happening.

And in *Kemalyan v. Henderson*, 45 Wn.2d 693, 706, 277 P.2d 372 (1954), it was pointed out that this court has held:

> [T]hat a plaintiff can allege and attempt to prove specific acts of negligence on the part of defendant and still rely on *res ipsa loquitur* . . . .

Still more recent support for such a holding is found in *Bolander v. Northern Pac. Ry.*, 63 Wn.2d 659, 662, 388 P.2d 729 (1964).

The defendant attempted to meet the inference of negligence permitted by res ipsa loquitur by evidence that the cause of the damages sustained by the plaintiffs was an "Act of God." The jury was instructed that if the cause of

the slide was an "Act of God," it was a complete defense "regardless of any duty that might have been placed on the defendant in the operation of its ditch." By its verdict, the jury clearly rejected that defense, and its determination of liability can be upheld on the basis of res ipsa loquitur.

Having concluded that the jury's verdict and the judgment based thereon could be sustained on the issue of liability, we come to the consideration of the defendant's contention that the verdict of $33,025 and the judgment based thereon is excessive.

There was an express finding by the jury that the verdict was allocated $30,000 for the death of the child; $2,830 for the damage to personal property; and $195 for the funeral expenses of the child. The claim that the damages are excessive is limited to the $30,000 item.

The plaintiffs, in their complaint, asked for $15,000 for the loss of companionship of their child and $15,000 for the loss of his services and earnings; and the jury was so instructed.[3]

Not until April of 1967, in the case of *Lockhart v. Besel*, 71 Wn.2d 112, 426 P.2d 605, did we recognize that the measure of damages allowable in an action by parents for the wrongful death of a minor child could include—in addition to the value of the child's services during his minority —the loss of companionship during the child's minority.

In that case we granted a new trial in order that the loss of companionship during the child's minority might be included in the measure of damages submitted to the jury. We there said at 117:

---

[3]The purpose of the plaintiffs in thus dividing their prayer for damages is obvious. There was at that time (March of 1966), reason to hope that we might recognize the loss of companionship as an element of damages, but no real reason to believe that we would. If the damages were in a lump sum, and we held that it was error to have included that element of damages (as the precedents indicated we would), the entire judgment would have been tainted by the inclusion of that element of damages, and a new trial would have been necessary. By segregating their damages, as they did, the verdict for the loss of services might be sustained, even if the damages awarded for loss of companionship were disallowed.

We hold that the measure of damages under RCW 4.24.010, . . . should be extended to include the loss of companionship of a minor child during his minority without giving any consideration for grief, mental anguish or suffering of the parents by reason of such child's wrongful death. This rule is consistent with the better reasoned cases and the modern trend in other jurisdictions of this country. (Citing cases.)

The reason for this extension of the measure of damages in actions for damages for the wrongful death of a child is stated at some length in *Lockhart v. Besel, supra,* and need not be repeated here. In summary, it was that the measure of damages to which we had been limited, *i.e.,* the value of the services of the child from the date of death until he would have attained the age of majority, less the cost to his parents of his support and maintenance during this interval, was unjust and archaic. In most instances it was impossible to apply that rule honestly and find any net pecuniary value to the parents from the services of his minor child. Actually, very few people raise children with any expectation of economic gain.

 We have adopted loss of companionship as a proper element of damages in an action for the wrongful death of a child, but with no intent to eliminate the loss of services since there are some instances where the services of a child do have a net pecuniary value to a parent under the instruction given by the trial court,[4] which has been frequently approved. This element of damages should be retained, but applied with a measure of intellectual honesty.

---

[4] "You should determine the value of the services of said child from the date of the death until he would have attained the age of majority, less the cost to his parents of his support and maintenance during this interval.

"In determining the value of the deceased child's services, you must take into consideration the child's health, his mental and physical capacity, both present and prospective, as well as the situation of his parents.

"In determining the value of the deceased child's services, you should not consider any distress, sorrow or mental suffering of the parents caused by the death of said child." (Instruction No. 14)

We must in this case, as heretofore indicated, divide the $30,000 verdict for the death of the child, $15,000 for loss of companionship, and $15,000 for loss of services. This was the plaintiffs' purpose and intention, and these were the exact amounts which the plaintiffs requested for each item of damage in their complaint.

We will consider first the damages claimed and awarded for the loss of companionship. One of the relatively few attempts to define companionship is found in *Wycko v. Gnodtke*, 361 Mich. 331, 339, 105 N.W.2d 118 (1960): [5]

> [J]ust as an item of machinery forming part of a functioning industrial plant has a value over and above that of a similar item in a showroom, awaiting purchase, so an individual member of a family has a value to others as part of a functioning social and economic unit. This value is the value of mutual society and protection, in a word, companionship.

California has upheld an award of $15,000 general damages for the death of a 10-month-old infant. *Couch v. Pacific Gas & Elec. Co.*, 80 Cal. App. 2d 857, 183 P.2d 91 (1947). There had been a reduction by the trial judge of a verdict for $27,500. In *Tyson v. Romey*, 88 Cal. App. 2d 752, 756, 199 P.2d 721 (1948), an award of $18,500 for the death of a 5-year-old child was approved. This had been reduced by the trial judge from $25,000 as fixed by the jury. The District Court of Appeal, answering the contention that actual pecuniary loss is the basis for damages for the death of a child, stated: "The rule is that comfort and society may be considered."

Concededly, the value of companionship is impossible of exact estimation, and as there is no fixed standard of value to be applied, the amount of damages must necessarily be left to the trier of the facts. In the two California cases just cited, the amount of damages had been reduced by the trial judge. In the *Tyson* case, *supra*, it was said:

---

[5] A five-to-three decision in which Michigan repudiated the value of services as the sole test for damages in an action for the wrongful death of a child, and approved a jury award of $15,000 for the death of a 14-year-old boy.

As is true in other cases involving the question of excessive judgment, it should be noted here that the remedy for excessive verdicts is primarily in the hands of the judge who presides at the trial. It is his duty to carefully weigh the evidence and not allow a verdict to stand if more damages are assessed than may be reasonably concluded the plaintiff will actually suffer. The appellate court's power "over excessive damages exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury. (p. 756)

█ We have refused to grant a new trial or reduce the verdict in cases where there is no fixed standard of value, and the amount of damages is peculiarly within the discretion of the jury, "unless this court's sense of justice is shocked by the amount of the award." *Sherman v. Seattle*, 57 Wn.2d 233, 248, 356 P.2d 316 (1960). See for later statements of the same holding: *Harvey v. Wight*, 68 Wn.2d 205, 210, 412 P.2d 335 (1966); *Gustin v. Susnar*, 68 Wn.2d 504, 506, 413 P.2d 822 (1966).

█ We affirm so much of the $30,000 verdict as was asked for the loss of companionship of the child, *i.e.*, $15,000.

█ A verdict of and judgment for such an amount for the services of a minor child does shock the conscience of this court. It has no support in our precedents or in reason. It is more than double (almost treble) any prior award we have ever approved for the loss of the services of a child.[6]

---

[6]We have not overlooked the $8,031.66 judgment in *Mieske v. PUD No. 1 of Cowlitz Cy.*, 42 Wn.2d 871, 259 P.2d 647 (1953), of which $7,500 was for loss of services of a 5½-year-old daughter. However, in that case, the appeal was by the plaintiffs from a $2,500 reduction made by the trial court. We affirmed the reduction, but indicated that had the defendant cross-appealed we would have held that there was not sufficient evidence to sustain the verdict.

The highest approved award was $5,350 (an additional $350 for funeral services) for the death of a 5-year-old daughter in *Becker v. Tacoma Transit Co.*, 50 Wn.2d 688, 314 P.2d 638 (1957). (On the appeal, the only issues were liability and misconduct of a juror; the amount of the verdict was never challenged.)

With one exception,[7] we have in this case the youngest child for whose death an award for damages has been made in this state.

Our reasoning has been that, as a general rule, the value of the services of a child does not exceed the cost of his care and maintenance during the so-called "tender years," and in *Skidmore v. Seattle,* 138 Wash. 340, 244 Pac. 545 (1926), we said, speaking of a boy 15 years of age:

> We have here a case where the son had just entered his earning period. Manifestly, the earning period between fifteen and twenty-one years of age is, under all ordinary circumstances, much more productive than any other equal period of minority. A minor has then reached the age when he is likely, if at all, to become as asset rather than a liability to the parent, in a pecuniary sense. (p. 344)

In that case, we raised the amount of the recovery from $1,200 to $2,500 ($2,640 included medical and funeral expenses). If we trebled that to allow for the change in purchasing power of the dollar, it would still be only half of the verdict for services in this case, with 12 of the completely nonproductive years, financially speaking, still ahead.

In considering the additional $15,000 claimed for the loss of services of the child, our viewpoint is considerably different than it would have been had we not decided to permit recovery for the loss of companionship.

Before our determination to allow recovery for the loss of companionship, we would have labored mightily to find some basis for upholding a verdict of three or four thousand dollars under the circumstances of this case as the only means of securing a substantial recovery for the bereft parents.

Having now opened the door for substantial recoveries

---

[7]The youngest was a child not quite 1 year old in *Abby v. Wood,* 43 Wash. 379, 86 Pac. 558 (1906).

for loss of companionship,[8] we see no further need to substitute fantasies for facts in striving to uphold unrealistic awards based on the loss of services. We have indicated that we will continue to recognize loss of services where there has been such a loss, but that in doing so we intend to retain some touch with reality.

This seems to be the view of the Michigan court for, in *Wycko v. Gnodtke, supra,* it is said:

> Finally if, in some unusual situation, there is in truth, or reasonably forthcoming, a wage-profit capability in the infant (an expectation of an excess of wages over keep, the measure heretofore employed) the loss of such expectation should not be disregarded as one of the pecuniary losses suffered. In such case, however, the assessment is made as a matter of fact and not of fiction. (Footnote omitted.) (p. 340)

There was no attempt in this case to show as a fact that the "value of the services of said child from the date of the death until he would have attained the age of majority" would exceed "the cost to his parents of his support and maintenance during this interval." There is no evidence to sustain the plaintiffs' claim for loss of services.

The cause is remanded to the superior court with instructions to reduce the judgment by $15,000, *i.e.,* from $33,025 to $18,025, and as so reduced the judgment is affirmed.

Having found with the respondents on the issue of liability and of damages for loss of companionship, and the appellant, on the other hand, having secured substantial relief, it is our view that the respondents and appellant should each pay their own costs on this appeal.

FINLEY, C. J., WEAVER and ROSELLINI, JJ., and OTT, J. Pro Tem., concur.

---

[8] By coincidence this court and the legislature were engaged in opening the same door at the same time. Six days after the opinion in the *Lockhart* case was filed, the Governor signed the bill which added the following sentence to RCW 4.24.010 (see footnote 1):

"In such an action, in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent-child relationship in such amount as, under all the circumstances of the case, may be just."