Nancy K. **EARLY** et al., Plaintiffs-Appellants,

v.

**UNITED STATES** of America,
Defendant-Appellee.

No. 71–2521.

United States Court of Appeals,
Ninth Circuit.

Feb. 22, 1973.

Stephen S. DeLisio (argued), Edward A. Merdes, of Merdes, Schaible, Staley & DeLisio, Fairbanks, Alaska, Robert A. Parrish, Fairbanks, Alaska, for plaintiffs-appellants.

Walter H. Fleischer, Atty. (argued), Alan S. Rosenthal, Ronald R. Glanz, Robert Greenspan, Morton Hollander, Attys., Dept. of Justice, Washington, D. C., G. Kent Edwards, U. S. Atty., Stephen Cooper, Asst. U. S. Atty., Fairbanks, Alaska, for defendant-appellee.

Before MERRILL, DUNIWAY and TRASK, Circuit Judges.

TRASK, Circuit Judge:

Only questions of damages are at issue in this Federal Tort Claims Act proceeding, 28 U.S.C. § 1346(b) et seq. The plaintiffs who are husband and wife recovered an aggregate of $380,000 for personal injuries and related claims. They appeal from the court's award because they believe it was not enough; the government cross appeals for the opposite reason.

The injury occurred when Mrs. Early fell down a flight of stairs at Eielson Air Force Base, striking her head upon the concrete floor below. She was immediately hospitalized and discharged two days later. Because of persistent headaches she was admitted to another hospital a day and a half after her first release where she remained for nine days undergoing tests. Approximately two months after her second trip to the hospital she returned for a reevaluation where results of tests were normal.

On the issue of damages the trial court heard approximately one thousand pages of testimony. The family history of Mrs. Early was developed from an early age and her life habits and personality traits before and after the injury were related in detail. On the date of the injury, September 29, 1967, she was 24 years old and three children had been born of her marriage to Sergeant Garnett C. Early.

The court found that Mrs. Early suffered damage to the central

nervous system and particularly to the brain as a proximate result of the fall occasioned by the negligence of the United States. These injuries altered her personality and have caused much pain and suffering. Finding 36c of the trial court is as follows:

"c. That Nancy Early is entitled to recover past damages as well as future damages in a reasonable amount for the foregoing, computed on the basis of her life expectancy, which is 49 years, as follows:

| | | |
|---|---|---|
| 1. | Pain and suffering, all causes, past and future | $225,000.00 |
| 2. | Loss of sense of smell and taste, past and future | 20,000.00 |
| 3. | Loss of enjoyment of sex, past and future | 30,000.00 |
| 4. | Psychotic conditions, including personality change and schizophrenic reaction, past and future | 20,000.00 |
| 5. | Future medical care (including psychiatric) | 15,000.00 |
| 6. | Future medications | 25,000.00 |
| 7. | Future household assistance | 15,000.00 |
| | Total damages to Nancy Early | $350,000.00" |

An award of $30,000 was made to her husband, Garnett C. Early, for loss of consortium, past and future.

Appellants insist that damages are inadequate. Their expert witness, a neurologist, testified that the salary for a nurse to assist the injured plaintiff in her household duties and to provide nursing care would be "roughly $500 per month." Because there was testimony that during some headache attacks Mrs. Early would be totally disabled, he further stated that nursing would require three eight-hour shifts costing $1,500 per month. Based on this figure over Mrs. Early's life expectancy, appellants calculated that an award for household assistance and nursing care should be $894,240. This same method of calculation was used to assert a claim of $127,750 for future psychiatric care, $44,712 for future medications, $61,300 for past loss of earning capacity and $766,600 for future loss of earning capacity. There was no expert testimony to dispute these estimates. The testimony did not bear out such a mathematical computation, however, as it showed that

Mrs. Early did not employ a housekeeper or nurse full time, let alone on 24-hour duty; that she did not regularly consult psychiatrists; and that she was not completely disabled from working should she desire to do so. On the basis of conflicting evidence, the court made its own determinations and we cannot say they were clearly erroneous.

As stated in County Asphalt, Inc. v. Lewis Welding & Engineering Corp., 444 F.2d 372, 378 (2d Cir.), cert. denied, 404 U.S. 939, 92 S.Ct. 272, 30 L. Ed.2d 252 (1971):

"When it comes to finding facts from the evidence, juries enjoy a near-total independence. Neither a court, The Conqueror, 166 U.S. 110, 131–133, 17 S.Ct. 510, 41 L.Ed. 937 (1897), nor a jury, Head v. Hargrave, 105 U.S. 45, 49, 26 L.Ed. 1028 (1881), is bound to accept an expert witness' opinion, either as to whether the contract specifications were fulfilled or as to the amount of damages, regardless of whether he is in any way contradicted or impeached."

Here there was much more evidence bearing on damages than the testimony of the neurologist. There was the testimony of the plaintiffs themselves and that of other witnesses called by both parties. All of the testimony was relevant on the damage issue.

The last argument advanced by appellants is that the court erred in failing to make an award for loss of affection and services sustained by the three children of appellants. Neither statute nor court decision in Alaska provides for such an award, although none denies it. In by far the majority of jurisdictions which have passed upon the question, such a claim has been rejected. Pleasant v. Washington Sand & Gravel Co., 104 U. S.App.D.C. 374, 262 F.2d 471 (1958); Meredith v. Scruggs, 244 F.2d 604 (9th Cir. 1957); Turner v. Atlantic Coast Line R. R., 159 F.Supp. 590 (N.D.Ga. 1958); Hoffman v. Dautel, 189 Kan. 165, 368 P.2d 57 (1962); Jeune v. Del E.

Webb Construction Co., 77 Ariz. 226, 269 P.2d 723 (1954).

Under such circumstances we accord great deference to the views of the trial court as to what the law of Alaska would be in the event the matter was presented and passed upon there. West v. Morrison-Knudsen Co., 451 F.2d 493 n. 5 (9th Cir. 1971); Turnbull v. Bonkowski, 419 F.2d 104 (9th Cir. 1969); Bellon v. Heinzig, 347 F.2d 4 n. 3 (9th Cir. 1965). He made no such award although he was importuned to do so, and again we cannot say that his judgment was clearly erroneous.

The government, on its cross appeal, first urges the excessiveness of the trial court's award for pain and suffering. In order for an award of damages for pain and suffering to be set aside as inadequate or excessive under the Federal Tort Claims Act, one must look to the law of the state where the cause of action arose. United States v. Sutro, 235 F.2d 499 (9th Cir. 1956). Alaska, consistent with the general rule, holds that to be reversible, such an award must be "manifestly unjust, such as being the result of passion or prejudice or a disregard of the evidence or rules of law." Beaulieu v. Elliott, 434 P.2d 665, 676 (Alas.1967). We cannot say that, applying such a test, the award of the trial court was improper.

The other claim of the government on cross appeal is that the trial court erroneously failed to reduce to its present worth its award of $55,000 for future medical, housekeeping and medication expenses. (Items 5, 6, and 7). The government did not submit evidence on computation of future awards and we are unable to say that the amounts fixed by the court are clearly erroneous in view of all of the evidence. We therefore reject the government's attack made upon the amounts of those awards based upon alleged failure to discount them.

The judgment is affirmed.