[No. 6209–1.   Division One.   September 4, 1979.]

RONALD M. ROTH, ET AL, *Appellants,* v. CHARLES D. BELL, ET AL, *Respondents.*

*Kleist & Davis, Donald K. Davis,* and *Robert W. Fetty,* for appellants.

*Williams, Lanza, Kastner & Gibbs, Thomas H. Fain, Lycette, Diamond & Sylvester, Earle W. Zinn, John T. Petrie, Reed, McClure, Moceri & Thonn, P.S.,* and *Kathy A. Cochran,* for respondents.

CALLOW, C.J.—On May 28, 1973, Judy Roth suffered a stroke allegedly occasioned by her ingestion of birth control pills manufactured by Ortho Pharmaceutical Corporation and prescribed for her by Dr. Charles D. Bell and Dr. Carl W. Allen. On May 18, 1976, Mrs. Roth and her husband, Ronald Roth, filed suit against Drs. Bell and Allen, alleging negligence, and against Ortho, alleging negligence and strict liability. Mr. Roth, as guardian ad litem for Mrs. Roth's three minor children, Troy, Rickie and Lisa Collins, also claimed damages on the same allegations "for loss of companionship, advice, destruction of the parent–child relationship, and future support, and emotional injury." The trial court granted the defendants' motions for dismissal of the children's action for failure to state a claim, and denied the motions of Drs. Bell and Allen for summary judgment

against the Roths. Appeal is taken from the dismissal of the children's action, and Drs. Bell and Allen cross–appeal the denial of their motions for summary judgment.

Mr. Roth argues on behalf of the Collins children that this court should alter the common law to allow minor children a cause of action for their loss of parental "consortium" occasioned by negligent injury to their parent by a third party. As a preliminary matter, the defendants contest the nature and extent of Mrs. Roth's impairment, and consequently the loss suffered by her minor children. In making the essentially legal determination of whether there is any state of facts that the plaintiffs could prove entitling them to relief under their claim, we accept as true the factual allegations of the complaint and, where necessary, those facts raised for the first time on appeal. CR 12(b)(6); *Halvorson v. Dahl,* 89 Wn.2d 673, 674–75, 574 P.2d 1190 (1978); *Contreras v. Crown Zellerbach Corp.,* 88 Wn.2d 735, 742, 565 P.2d 1173 (1977); *Barnum v. State,* 72 Wn.2d 928, 435 P.2d 678 (1967). The fact and cause of Mrs. Roth's stroke have already been noted. As a result, she has suffered significant, serious and permanent physical impairments, including a loss of mobility and an inability to speak and carry on conversations in a normal manner. Due to her impairments, she has not been able to care for or interact with her children in the same manner as she could prior to her stroke; thus, the quality of society that they normally would have had with their mother and the quality of their mother's parenting has been significantly diminished.

The issue raised is whether minor children have a separate cause of action for loss of parental consortium when one of the minors' parents is injured and the injury does not result in death. We must ask as inquiries within the main issue (a) whether prior Washington law has decided this issue; (b) whether the legislature's enactment and amendments of RCW 4.24.010 evidence an intent to preclude consideration of such a claim by children; and (c) whether a change of the common law in this instance falls within the province of the courts or the legislature.

The main guidepost from the decisions in this state is *Erhardt v. Havens, Inc.*, 53 Wn.2d 103, 105, 330 P.2d 1010 (1958), wherein the plaintiff–infants, by their father as guardian ad litem, sued the defendant–hospital alleging that the hospital's negligence caused their mother to become permanently paralyzed and mentally incapable of recognizing them. There was no hope of the mother's recovery, and the minors claimed that therefore they were damaged to the same extent as if she were dead. The trial court, acting under the old practice, sustained a demurrer and dismissed the action. On appeal, the hospital conceded that if the mother's injuries disabled her "'from supporting and providing care, training and education for her minor children,'" then those elements of damage would, if proven, be recoverable in an action maintained by the mother in her own behalf. *Erhardt v. Havens, Inc., supra* at 104. The court observed, however, that the action alluded to in the concession would have to be brought in the name of the husband because a cause of action for injuries to a married woman was community personal property over which the husband was then vested by law with exclusive management and control. *Erhardt v. Havens, Inc., supra* at 105. Commending the plaintiffs' concession that their suit was not sanctioned at common law but that the court should reevaluate it, the court held:

> This we might do under compelling necessity, but we find no occasion to do so here because the father himself, who is the guardian of the infant appellants, may maintain that action in his own name, and, by the respondent's concession, recover every item of damage claimed by the appellants.

*Erhardt v. Havens, Inc., supra* at 106–07.

RCW 4.24.010[1] grants to the parents of an injured child a cause of action by which they may recover, among other

---

[1]RCW 4.24.010 provides:

"The mother or father or both may maintain an action as plaintiff for the injury or death of a minor child, or a child on whom either, or both, are dependent for support: *Provided,* That in the case of an illegitimate child the father

elements of damage, for loss of the injured child's love and companionship and for "injury to or destruction of the parent–child relationship." The defendants argue that the legislature's enactment of this statute evidences an intention to preclude this court from acknowledging a like cause of action in the child for injuries to a parent. The plaintiffs argue contrarily that recent recognition of intangible injuries, as evidenced by RCW 4.24.010, mandates the grant of a correlative cause of action to minor children.

The precursor to RCW 4.24.010, passed by the territorial legislature in 1869, read:

> A father, or in case of the death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a child, and a guardian for the injury or death of his ward.

Laws of 1869, ch. 1, § 9, p. 4. Insofar as it related to a parent's cause of action for injury to a child, the statute was but a codification of the English common–law rule allowing a father, a widowed mother or one standing in loco parentis to sue for injury to a child, recovery being limited to the

cannot maintain or join as a party an action unless paternity has been duly established and the father has regularly contributed to the child's support.

"This section creates only one cause of action, but if the parents of the child are not married, are separated, or not married to each other damages may be awarded to each plaintiff separately, as the court finds just and equitable.

"If one parent brings an action under this section and the other parent is not named as a plaintiff, notice of the institution of the suit, together with a copy of the complaint, shall be served upon the other parent: *Provided*, That when the mother of an illegitimate child initiates an action, notice shall be required only if paternity has been duly established and the father has regularly contributed to the child's support.

"Such notice shall be in compliance with the statutory requirements for a summons. Such notice shall state that the other parent must join as a party to the suit within twenty days or the right to recover damages under this section shall be barred. Failure of the other parent to timely appear shall bar such parent's action to recover any part of an award made to the party instituting the suit.

"In such an action, in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent–child relationship in such amount as, under all the circumstances of the case, may be just." (Amended by Laws of 1967, 1st Ex. Sess., ch. 81, § 1; Laws of 1973, 1st Ex. Sess., ch. 154, § 4.)

pecuniary value of the loss or diminution of the child's earning power and services and for any increase of the parent's expenses in maintaining the child. *Hedrick v. Ilwaco Ry. & Nav. Co.,* 4 Wash. 400, 404, 30 P. 714 (1892); 3 W. Blackstone, *Commentaries* 142–43 (Lewis' ed. 1900); C. McCormick, *Handbook on the Law of Damages* § 91, at 327–29 (1935); W. Prosser, *The Law of Torts* § 124, at 873 (4th ed. 1971); Note, 56 B.U.L. Rev. 722, 724 (1976). The common–law action and remedy were predicated upon and limited by the parents' entitlement to the child's services. The common–law measure of recovery was applied to the statutory cause of action. *See Hedrick v. Ilwaco Ry. & Nav. Co., supra.*

In contrast to the common–law rights of a parent, a child had no reciprocal right to the parent's services. Therefore, the child had no cause of action for negligent injury to the parent. *Pleasant v. Washington Sand & Gravel Co.,* 262 F.2d 471, 473 (D.C. Cir. 1958); W. Blackstone, *Commentaries, supra*; H. Clark, *Law of Domestic Relations in the United States* § 10.6 (1968); W. Prosser, *supra* § 125, at 889–90; Pound, *Individual Interests in the Domestic Relations,* 14 Mich. L. Rev. 177, 185–86 (1916). The purpose of the 1869 statute was to overcome the common–law rule that disallowed the maintenance of a civil action for the damages resulting from the death of a human being. The 1869 statute enabled a child's parents to bring a civil action for their child's wrongful death. *Hedrick v. Ilwaco Ry. & Nav. Co., supra.* The loss of the child's services, plus the parents' added expenses, were the predicates upon which the action was based. *Lockhart v. Besel,* 71 Wn.2d 112, 114–16, 426 P.2d 605 (1967); *Hedrick v. Ilwaco Ry. & Nav. Co., supra.*

The 1869 statute remained unchanged through subsequent reenactments in 1873, 1877 and 1881. In 1927, the legislature expanded the act's coverage.[2] The apparent legislative intent during these years was to retain the common–law action for injuries to a child, and to abrogate the

---

[2]Laws of 1927, ch. 191, § 9, p. 241 provided:

common–law rule that disallowed an action for a child's wrongful death. *United States v. Burlington Northern, Inc.*, 500 F.2d 637, 639 (9th Cir. 1974), *Dernac v. Pacific Coast Coal Co.*, 110 Wash. 138, 188 P. 15 (1920), and *Whittlesey v. Seattle*, 94 Wash. 645, 163 P. 193 (1917), do not support the contention that the legislature's purpose was to foreclose the authority of appellate courts to review the issue before us. Those cases deal with matters of statutory construction concerning the scope of a statute. Further, in relation to those cited cases we observe that the maxim *expressio unius est exclusio alterius* applies where a party is seeking to be brought within the terms of a statute, *see State v. Roadhs*, 71 Wn.2d 705, 430 P.2d 586 (1967), not where a party is seeking the creation of a new and independent cause of action.

*Lockhart v. Besel, supra* at 116–17, recognized the limitation of damages to a parent for the solely pecuniary loss of a child's services as an outmoded fiction that provided juries with no measure of recovery and the parents with little hope of realistic compensation. *See also Clark v. Icicle Irr. Dist.*, 72 Wn.2d 201, 206, 432 P.2d 541 (1967). The *Lockhart* case, a wrongful death action, extended the measure of damages under RCW 4.24.010 to include the loss of companionship of a minor child during minority, without consideration being given for the parents' grief, mental anguish or suffering. This was justified as effectuating the legislature's intent to allow recovery of more than nominal damages. *Lockhart v. Besel, supra* at 117. Where the injury supporting the action and remedy once was viewed as a termination of the parties' economic relationship, the injury is now viewed as primarily the disruption and loss of human companionship. *See* H. Clark, *supra* § 10.6, at 278 & n.5.

---

"A father, or in case of his death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a minor child, or a child on whom either is dependent for support, and the mother for the injury or death of an illegitimate minor child, or an illegitimate child on whom she is dependent for support."

Six days after the opinion in the *Lockhart* case was filed, the Governor signed a bill amending RCW 4.24.010. Laws of 1967, 1st Ex. Sess., ch. 81, § 1, p. 1734. The addition relevant to the present discussion provides:

> In such an action [for wrongful death or injury of a child], in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent–child relationship in such amount as, under all the circumstances of the case, may be just.

This language was meant to remedy the inadequacy of the common–law measure of damages. *Wilson v. Lund,* 80 Wn.2d 91, 491 P.2d 1287 (1971). As stated in *Lund* at page 95:

> The loss of or injury to a child is an experience involving a complex pattern of human relationships, emotional reactions, and responses. The 1967 amendment evidences recognition of this complex pattern.

In the face of *Lockhart's* prior interpretation allowing compensation for loss of companionship, *Lund* held that the introduction of the language "'loss of love . . . and . . . injury to or destruction of the parent–child relationship'" was intended to allow recovery for parental grief, mental anguish and suffering. *Wilson v. Lund, supra* at 94–96.

It is argued that the 1967 and 1973[3] amendments indicate the legislature's satisfaction with the result of *Erhardt v. Havens, Inc., supra.* The cases cited to support this argument, *Whittlesey v. Seattle, supra* at 658, and *State v. Gustafson,* 87 Wash. 613, 152 P. 335 (1915), stand for the proposition that where the legislature reenacts and amends legislation previously construed by the courts, and the legislature does not act to change the court's interpretation, then it is presumed to be satisfied by the interpretation.

---

[3]The statute was again amended in 1973 by Laws of 1973, 1st Ex. Sess., ch. 154, § 4, p. 1124. The text of the amendment has no bearing upon the present discussion.

We note, however, that the *Erhardt* opinion did not purport to construe RCW 4.24.010, but recognized the judiciary's authority to consider the issue by stating that it might change the common–law rule under "compelling necessity." *Erhardt v. Havens, Inc., supra* at 107.

■ ■ The legislature may legislate in areas dealing with facets of tort law involving familial relationships, but such legislative action does not divest courts of their authority to alter rules of law which had their genesis in the courts under the common law. *Cf. Carroll v. Kittle,* 203 Kan. 841, 457 P.2d 21, 27 (1969). The legislative history of RCW 4.24.010 does not support reading into the legislature's actions a preclusive intent. On the other hand, the fact that the legislature has permitted parental recovery for emotional injuries does not convince us that the policy should be extended by the judiciary to encompass a new class of beneficiaries.

Society changes and the common law must be reevaluated and retested from time to time by the judiciary to determine if the law on a particular subject has kept pace with conditions. The common law must be rational and compatible with present society if it is to be respected and upheld. *Stanard v. Bolin,* 88 Wn.2d 614, 621, 565 P.2d 94 (1977); *Freehe v. Freehe,* 81 Wn.2d 183, 500 P.2d 771 (1972); *Cooper v. Runnels,* 48 Wn.2d 108, 291 P.2d 657, 57 A.L.R.2d 597 (1955); *Pierce v. Yakima Valley Memorial Hosp. Ass'n,* 43 Wn.2d 162, 166, 260 P.2d 765 (1953); *Strode v. Gleason,* 9 Wn. App. 13, 17, 510 P.2d 250, 60 A.L.R.3d 924 (1973). "[W]hen the reason for the law ceases, the law itself ceases." *State ex rel. King County v. Superior Court,* 104 Wash. 268, 275, 176 P. 352 (1918). As observed, a parent's common–law cause of action for a child's injuries was founded upon the loss of the child's services, an element of damages which, while still compensable, has taken second place to the current understanding that the injury or wrong done is primarily to the parents' human relationship with their child. Yet, while the common law denied the child a correlative cause of action for the parents' injuries

because he or she had no enforceable right to their services, the law has been slow to recognize that the child suffers an injury as great or greater when the companionship of a parent is lost or seriously diminished due to the negligent acts of another; this despite the actuality that, as evidenced in regard to the parent's cause of action, even be it for the malicious alienation of a child's affections, *Strode v. Gleason, supra* at 16–18, the right to and the loss of "services" no longer serves as a realistic basis upon which to qualify the cause of action. "Consistency, while it falls short of dictating every judicial decision, is nevertheless one of the fundamental elements of justice." *Roberts v. Johnson,* 91 Wn.2d 182, 186, 588 P.2d 201 (1978).

The inquiry becomes whether in view of present conditions and present–day attitudes a child should be granted the cause of action. The determination is one of public policy. *Borer v. American Airlines, Inc.,* 19 Cal. 3d 441, 563 P.2d 858, 138 Cal. Rptr. 302 (1977); *Berger v. Weber,* 82 Mich. App. 199, 267 N.W.2d 124 (1978). The decision whether the imposition of harm shall result in legal liability essentially involves a "balancing [of] the interest of the injured party to compensation against the view that a negligent act should have some end to its legal consequences." *Hunsley v. Giard,* 87 Wn.2d 424, 435, 553 P.2d 1096 (1976). Here, this determination is properly for the legislature.

In arriving at this conclusion, we recognize that "*'intangible–emotional' injuries can and do constitute real and significant harms.*" *Wilson v. Lund, supra* at 98. The loss or diminution of a parent's society, love and affection is a significant injury, just as is the parent's injury when he or she is deprived of the child's companionship. We agree that "an individual member of a family has a value to others as part of a functioning social and economic unit. This value is the value of mutual society and protection, in a word, companionship." *Clark v. Icicle Irr. Dist.,* 72 Wn.2d 201, 207, 432 P.2d 541 (1967) (quoting *Wycko v. Gnodtke,* 361 Mich. 331, 339, 105 N.W.2d 118 (1960)). Likewise, "parental affection is an element of priceless advantage to the child."

*In re Palmer,* 81 Wn.2d 604, 607, 503 P.2d 464 (1972). *See also Moore v. Burdman,* 84 Wn.2d 408, 411, 526 P.2d 893 (1974). "[T]he intangibles which follow from living together as a family, the affection, society, companionship, the mutual learning, the moral support given and received" (H. Clark, *The Law of Domestic Relations in the United States* § 10.1, at 262 (1968)), together with the parents' fulfillment of their general obligations (*In re Miller,* 86 Wn.2d 712, 548 P.2d 542 (1976); *In re Adoption of Lybbert,* 75 Wn.2d 671, 453 P.2d 650 (1969); *In re Adoption of Dobbs,* 12 Wn. App. 676, 531 P.2d 303 (1975)), call attention to the child's claim of an interest in their undiminished continuation. *See, e.g., Hill v. Sibley Memorial Hosp.,* 108 F. Supp. 739 (D.D.C. 1952); *Borer v. American Airlines, Inc., supra; Hankins v. Derby,* 211 N.W.2d 581, 582 (Iowa 1973); *Berger v. Weber, supra;* W. Prosser, *The Law of Torts* § 125, at 896–97 (4th ed. 1971); Pound, *Individual Interests in the Domestic Relations,* 14 Mich. L. Rev. 177, 185 (1916). *See also Russick v. Hicks,* 85 F. Supp. 281, 284–85 (W.D. Mich. 1949); *Miller v. Monsen,* 228 Minn. 400, 37 N.W.2d 543 (1949).

However, RCW 4.24.010 and the wrongful death acts are legislative creations. *Lockhart v. Besel, supra,* which acknowledged the parents' emotional injury as the harm most deserving of recompense, directly resulted from the perceived necessity of effectuating the legislature's intent to afford recovery of more than nominal damages under RCW 4.24.010. The seeming anomaly in allowing parents but not children to sue for injury to the relationship is a creature of the legislature, not of the courts. The legislative process is open and responsive to every interest involved in a decision, while the courts, in general, are open only to the parties properly before them. Every court that has been called upon to decide the issue, save only[4] the Michigan Court of

---

[4]The following cases, representing 14 states and the District of Columbia, deny recovery: *Early v. United States,* 474 F.2d 756 (9th Cir. 1973) (Alaska law); *Pleasant v. Washington Sand & Gravel Co.,* 262 F.2d 471 (D.C. Cir. 1958);

Appeals, *Berger v. Weber, supra,* has dismissed as unpersuasive the arguments presented in favor of the creation of such a right. We read the *Berger* case as ignoring the argument that a defendant should not be exposed to unlimited liability from multiple lawsuits. As stated in *Clark v. Suncoast Hosp., Inc.,* 338 So. 2d 1117, 1118–19 (Fla. Dist. Ct. App. 1976):

> Numerous considerations weigh against formulation of children's right of action. Nine of these reasons are cited in a note in 54 Michigan Law Review 1023 (1956):
> (1) The absence of any enforceable claim on the child's part to the parent's services, (2) the absence of precedent, (3) the uncertainty and remoteness of the damages involved, (4) the possible overlap with the parent's recovery, (5) the multiplication of litigation, (6) the possibility of settlements made with parents being upset, (7) the danger of fabricated actions, (8) the increase of insurance costs, and (9) the public policy expressed in some jurisdictions in the enactment of "heart balm" statutes.

*See also Hoffman v. Dautel,* 189 Kan. 165, 368 P.2d 57 (1962); *Cox v. Stretton,* 77 Misc. 2d 155, 352 N.Y.S.2d 834 (Sup. Ct. 1974). Finally, as concluded in *Borer v. American*

---

*Meredith v. Scruggs,* 244 F.2d 604 (9th Cir. 1957), *rev'g per curiam,* 134 F. Supp. 868 (D. Hawaii 1955); *Turner v. Atlantic Coast Line R.R.,* 159 F. Supp. 590 (N.D. Ga. 1958); *Hill v. Sibley Memorial Hosp.,* 108 F. Supp. 739 (D.D.C. 1952); *Jeune v. Del E. Webb Constr. Co.,* 77 Ariz. 226, 269 P.2d 723 (1954), *overruled on other grounds, Glendale v. Bradshaw,* 108 Ariz. 582, 503 P.2d 803 (1972); *Borer v. American Airlines, Inc.,* 19 Cal. 3d 441, 563 P.2d 858, 138 Cal. Rptr. 302 (1977); *Clark v. Suncoast Hosp., Inc.,* 338 So. 2d 1117 (Fla. Dist. Ct. App. 1976); *Halberg v. Young,* 41 Haw. 634, 59 A.L.R.2d 445 (1957); *Hankins v. Derby,* 211 N.W.2d 581 (Iowa 1973); *Hoffman v. Dautel,* 189 Kan. 165, 368 P.2d 57 (1962); *Eschenbach v. Benjamin,* 195 Minn. 378, 263 N.W. 154 (1935), *overruled on other grounds, Beaudette v. Frana,* 285 Minn. 366, 173 N.W.2d 416 (1969); *Stout v. Kansas City Terminal Ry.,* 172 Mo. App. 113, 157 S.W. 1019 (1913) (dicta), *overruled on other grounds, Novak v. Kansas City Transit, Inc.,* 365 S.W.2d 539 (Mo. 1963); *General Elec. Co. v. Bush,* 88 Nev. 360, 498 P.2d 366 (1972); *Russell v. Salem Transp. Co.,* 61 N.J. 502, 295 A.2d 862, 69 A.L.R.3d 522 (1972); *Cox v. Stretton,* 77 Misc. 2d 155, 352 N.Y.S.2d 834 (Sup. Ct. 1974); *Duhan v. Milanowski,* 75 Misc. 2d 1078, 348 N.Y.S.2d 696 (Sup. Ct. 1973); *Gibson v. Johnston,* 144 N.E.2d 310 (Ohio Ct. App. 1956), *appeal dismissed,* 166 Ohio St. 288, 141 N.E.2d 767 (1957).

*Airlines, Inc.,* 19 Cal. 3d 441, 453, 563 P.2d 858, 138 Cal. Rptr. 302 (1977):

> We are keenly aware of the need of children for the love, affection, society and guidance of their parents; any injury which diminishes the ability of a parent to meet these needs is plainly a family tragedy, harming all members of that community. We conclude, however, that taking into account all considerations which bear on this question, including the inadequacy of monetary compensation to alleviate that tragedy, the difficulty of measuring damages, and the danger of imposing extended and disproportionate liability, we should not recognize a nonstatutory cause of action for the loss of parental consortium.

We conclude that if a right of action is to be granted to a minor child for injury to a parent, such a decision should follow after all of the voices have been heard and the legislative process has done its work.

## DENIAL OF SUMMARY JUDGMENT

Drs. Bell and Allen have each filed a notice of appeal asking review of the trial court's denial of their motions for summary judgment of dismissal of the parents' claims. A denial of a motion for summary judgment is not appealable. *See* RAP 2.1; *Rodin v. O'Beirn,* 3 Wn. App. 327, 332, 474 P.2d 903 (1970); Annot., 15 A.L.R.3d 899, § 10 (1967). Although a notice of appeal of a decision that is not appealable will be given the same effect as a notice for discretionary review, RAP 5.1(c), the trial court's denial of summary judgment is not a proper subject of a notice for discretionary review under RAP 2.3(b).

The judgment is affirmed and the cause remanded for further proceedings on the claims brought by the parents.

JAMES and WILLIAMS, JJ., concur.

Reconsideration denied October 18, 1979.