HATTIE TATE, ADMINISTRATRIX, APPELLEE, V. WILLARD
BARRY ET AL., APPELLANTS.

13 N. W. 2d 879

FILED MARCH 31, 1944.   No. 31674.

*L. R. Doyle,* for appellants.

*Chambers, Holland & Locke, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

This is an appeal by the defendants from a judgment for damages for wrongful death of a pedestrian struck by an automobile.

Hattie Tate alleged in her petition that she was the administratrix of the estate of Guy W. Tate, her husband, who was struck and killed by a truck belonging to Willard Barry and driven by his employee, John F. Hraban, in the course of his employment for said Willard Barry. Said accident occurred on June 17, 1942, on U. S. highway No. 77, six miles south of Lincoln, on a bridge crossing Salt creek at this point.

It was alleged that immediately prior to the accident plaintiff's decedent was walking north on the left-hand side of the highway, in plain sight of Hraban.

Plaintiff further alleges that the proximate cause of the accident and resulting death was the negligence and carelessness of said John F. Hraban, in that (1) he failed and neglected to keep a proper lookout ahead on said highway, and particularly for plaintiff's decedent; (2) he failed and neglected to have said truck under proper control; (3) he failed and neglected to observe the plaintiff's decedent on said highway, and failed to avoid striking him; (4) he negligently attempted to pass another vehicle on said bridge without determining that said movement could be made in safety; and (5) he attempted to pass another vehicle while the latter was crossing a bridge on U. S. highway No. 77.

It is claimed that prior to his death plaintiff's decedent was a healthy, able-bodied man, 57 years old, upon whom his wife, Hattie Tate, was solely dependent for support, and that through farming and stock raising he earned at least $1,200 a year, all of which was expended toward the care, maintenance and support of said Hattie Tate.

The answer filed by defendants admitted the death of

Guy W. Tate on June 17, 1942, and that on said date John F. Hraban was driving a truck belonging to defendant Willard Barry, which truck was involved in the accident, and denied each and every other allegation contained in the petition.

The answer alleges that John F. Hraban was driving said truck in a careful and prudent manner and at a reasonable rate of speed, and that Guy W. Tate suddenly and without warning stepped onto the pavement and into the left side of the truck.

The answer further alleges that Guy W. Tate was killed by his own acts of negligence and contributory negligence in the following particulars, to wit: (a) Stepping from the side of the road directly into the side of said truck; (b) failure to keep a proper lookout for traffic, particularly for the truck driven by defendant John F. Hraban; and (c) stepping out onto the pavement directly into the side of said truck when deceased knew, or in the exercise of reasonable care should have known, of the approach of said truck. It is claimed that all of the above described acts of negligence or contributory negligence on the part of decedent were the proximate cause of his injuries and death and the damages alleged to have been sustained by plaintiff, and defendants pray that plaintiff's petition may be dismissed.

The reply was a general denial of all new matter set out in defendants' answer.

The cause was tried to a jury, and a verdict was rendered in favor of plaintiff for the sum of $15,000, whereupon the court entered judgment thereon.

The court, in ruling on the motion for new trial, ordered that the motion of defendants for a new trial should be sustained unless plaintiff filed a remittitur of $3,000 within ten days, in which case motion should be overruled. Four days thereafter plaintiff filed remittitur of $3,000 to be deducted from the judgment rendered.

The defendants set out ten errors for reversal, which may be briefly summarized as excessive damages not sustained by the evidence; that instruction No. 1 was erro-

neous in telling the jury to consider decedent's daughter Lois as a beneficiary, and in informing the jury that decedent earned $1,200 a year from farming and stock raising, when there was no evidence to show the amount of the earnings of deceased, and in setting out in said instruction No. 1 that plaintiff was asking a judgment for $20,500, and in setting out almost verbatim the allegations of the petition.

The next assignment of error is that the court erred in giving instruction No. 4, which implied that the daughter of the decedent suffered a "great" loss on account of the death of her father, when there was no testimony in the record to show that the daughter suffered any loss whatsoever.

The final assignment is in regard to instruction No. 6, which, it is claimed, told the jury that, if they found for the plaintiff, it was their duty to give the full amount of damages the widow and next of kin would suffer by such death; whereas plaintiff did not plead that next of kin was dependent, and the jury were cut off entirely in this instruction from any reduction under the comparative negligence doctrine.

We will now consider each of these assignments of error. It is charged that instruction No. 1 was prejudicial in that it set out "almost verbatim the allegations of the petition," and set out the total damages for which the plaintiff brought suit. An examination of instruction No. 1 shows that it gave a fair synopsis of the material allegations of the pleadings in a little over three pages of typewriting, which condensed the pleadings about one-half and still retained the substance of them.

This court has said that, if the court gives the jury in simple language a concise summary of the pleadings, in so far as the evidence tends to support such facts, thus setting out the issues fairly before the jury, it is a proper instruction. See *Evans v. First Nat. Bank,* 138 Neb. 727, 297 N. W. 154; *Merritt v. Ash Grove Lime & Portland Cement Co.,* 136 Neb. 52, 285 N. W. 97.

In regard to stating the amount for which the plaintiff brings suit, it appears that trial judges follow two plans. It is quite customary for some of them to state the amount for which suit is brought in summarizing the allegations of the petition, while other trial judges simply state at the conclusion of their instruction, setting out the substance of the petition, that the plaintiff brings suit for a substantial amount. The latter is probably the preferred plan, but the former certainly does not constitute prejudicial error.

The defendants charge that the fourth instruction was erroneous in saying that the case depends upon negligence, and "unless negligence on the part of the defendant Hraban which was the proximate cause of the accident has actually been proved by the evidence, you cannot properly find for the plaintiff, no matter how great the injury to the plaintiff's decedent intestate *or how great the loss to the plaintiff and her daughter,* and your verdict should be for the defendants." (Italics ours.)

This all-inclusive mention of the only two members of the family left surviving is not a positive or direct charge to find anything on account of the daughter, who was the next of kin. The evidence disclosed that the daughter has been a schoolteacher in the Seward high school for many years, then married, and her husband has been in the army since May, 1942, and when he left she moved out to the farm to stay with her parents.

It is contended by the defendants that, if the impression made upon the jury by these instructions was that they could also provide for the daughter's needs, it would be prejudicially erroneous.

A petition filed by the personal representative of a deceased person under the provisions of Lord Campbell's Act, as adopted by our legislature, is based on the theory that ordinarily the next of kin do have a pecuniary interest in the life of a person killed, and the value of that interest is the amount of the pecuniary injury for which the statute provides compensation. It treats human life in a pecuniary aspect. It might include a loss arising from a deprivation

of benefits which from all the circumstances of the particular case it could be expected with reasonable certainty that such heirs would have received from the deceased had his life not been taken.

"A presumption of pecuniary loss exists in favor of one legally entitled to service or support from one killed by the wrongful or negligent act of another." *Killion v. Dinklage,* 121 Neb. 322, 236 N. W. 757. See, also, *Warren v. Englehart,* 13 Neb. 283, 13 N. W. 401.

In our opinion, there was no error in referring to the daughter in the fourth instruction, she being the next of kin.

We will now examine instruction No. 6, to which exceptions are also taken. It reads as follows: "If you find for the plaintiff under the evidence and under these instructions, your verdict should be for such an amount as will equal the present worth of the monetary loss which the widow of the deceased and next of kin will suffer by reason of the death of the plaintiff's decedent, taking into account the probable life expectancy of the deceased and the contributions he would have with reasonable certainty made to his widow had he lived his normal expectancy. You will in no event give the plaintiff anything by way of punishment and no exemplary or punitive damages as the same are not permitted by the law of this state."

This instruction, apparently limiting the recovery to the payments he would have made to the widow alone, is more favorable to the defendants than to the plaintiff, but the plaintiff has not cross-appealed.

This section 30-810, Comp. St. Supp. 1941, of our statutes contains apparently inconsistent provisions. By the amendment of 1937, six lines were added at the end, reading as follows: "and the amount so received in settlement or recovered by judgment shall be reported to and paid into said court for distribution subject to the order of such court to the persons entitled thereto: Provided, said amount shall not be subject to any claim against the estate of said decedent."

Even after this amendment of 1937, Judge Rose in writing the opinion in *Boell v. Overbaugh*, 141 Neb. 264, 3 N. W. 2d 439, explained that the proceeds in that suit under Lord Campbell's Act would pass one-third to plaintiff and two-thirds to his four children. For while this statute clearly limits the damages to the pecuniary loss of certain designated persons, yet it also provides for distribution in the same proportions as personal property. Undoubtedly in this case there was no reason why any one or more beneficiaries should be treated as having any special reason for being favored in the final distribution because of probable contributions which they might have received from the deceased.

But in the case of *In re Estate of Lucht*, 139 Neb. 139, 296 N. W. 749, we have a rather unusual case, in which a 14-year-old boy was killed and the mother brought action as administratrix for his wrongful death, and recovered $3,261.78. The trial court ruled that the father was entitled to no part of this money. The mother had secured a divorce from the father when the son was a year old, and his custody was awarded to the mother, but no alimony; aside from $50 given the mother shortly after the decree was granted in 1920, the father has never contributed anything to the support of the son, and now he has several children by his second marriage. In deciding this case, we rejected the claim of the father on the ground that he had not suffered a pecuniary loss, and said:

"In the phrase 'shall be paid to and distributed among such persons,' the words 'such persons' can logically only mean those persons in whose behalf the action is brought, namely, that portion of the potential beneficiaries of the act as are damaged. We hold that the amount recovered by the personal representative of a deceased, under the provisions of section 30-810, Comp. St. 1929, as amended by chapter 92, Laws 1919, shall be paid to and distributed among such of the widow, widower and next of kin of such deceased as suffer a pecuniary loss by the death of such deceased. The amendment of 1937, heretofore mentioned, seems to be in harmony with this holding."

These last two cases are not in conflict. In the action for the wrongful death brought by the personal representative in the district court, he is required to bring such action "for the exclusive benefit of the widow or widower and next of kin," and if he secures a judgment it is reported to the county court and the distribution thereof is to be made in that court to "such persons in the same proportions as the personal property of an intestate" is distributed.

However, under the amendment of 1937, as construed by this court in *In re Estate of Lucht, supra,* when objections are made to such distribution by any one in whose behalf the action was brought and a showing made in support thereof it is then the duty of the county court to determine who, of the widow or widower and next of kin, have suffered a pecuniary loss and the extent thereof, and distribute the funds recovered to such persons as are entitled thereto. The legislature having placed in the county court the duty to determine who, of the widow or widower and next of kin, have suffered the pecuniary loss and the amount thereof, this question is not for the trial court. Therefore, in an action by the legal representative of a deceased brought in behalf of the widow or widower and next of kin, the trial court should submit to the jury the question of the amount of the pecuniary loss, if any, which the evidence, with reasonable certainty, shows they have suffered.

It is also charged that the verdict of the jury was excessive and that by the Carlisle tables of expectancy the deceased had 16.89 years to live, and that the largest possible recovery would have been the sum of $9,755.80. However, the expectancy tables are not conclusive, and while these tables were offered in evidence, the law is that "Generally, mortality tables are regarded merely as convenient aids in estimating the probable expectancy of life of an individual, and are not to be taken as conclusive." 116 A. L. R. 416, Annotation. See, also, *Litwiller v. Graff*, 124 Neb. 460, 246 N. W. 922; *Moses v. Mathews*, 95 Neb. 672, 146 N. W. 920.

The widow in the instant case testified that the deceased

was a strong, active, healthy farmer, doing all kinds of general farm work, and that he gave her the sum of at least $80 a month.

The law does not provide a positive, definite mathematical formula or legal rule by which the jury shall fix the pecuniary loss suffered in the death of the head of a family. Substantial damages will be presumed from the death of a husband who was supporting his wife. See L. R. A. 1916E, 143-146; *Hindmarsh v. Sulpho Saline Bath Co.*, 108 Neb. 168, 187 N. W. 806.

To justify the granting of a new trial on the ground that the verdict is excessive, that fact must be plain or evident. It is not sufficient merely to raise a doubt as to whether the damages are too large; it must be affirmatively and satisfactorily shown that they are so. In the case at bar, the amount of the judgment was supported by the evidence as not excessive.

In our opinion, the judgment entered in the lower court was sustained by the evidence, and is hereby affirmed.

AFFIRMED.