Joaquin GALLART–MENDIA, as Manager of the State Insurance Fund of Puerto Rico, ex rel.

Juana ROSA–RIVERA, individually, Juana Rosa-Rivera, as mother with patria potestas of the minor child Efrain Silva-Rosa, Juana Rosa-Rivera, as adult with patria potestas of the minor children Wilfredo de Jesus, and Nelson de Jesus,

and

Gregorio Silva-Rosa, Ana Vitalia Silva-Rosa, Cruz Maria Silva-Rosa, and Juana Rosa-Rivera, as mother with patria potestas of the minor child, Ana Elsa Silva-Rosa, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 118–62.

United States District Court
D. Puerto Rico.

May 15, 1964.

Donald Dexter, San Juan, P.R., for Joaquin Gallart-Mendia.

Nachman & Feldstein, San Juan, P.R., for the other plaintiffs.

Francisco A. Gil, Jr., U. S. Atty., and Benicio Sanchez Rivera, Ass't. U. S. Atty., San Juan, P.R., for defendant.

RUIZ-NAZARIO, Chief Judge.

### FINDINGS OF FACTS

1.—On July 22, 1961, Samuel B. Potter was an employee and agent of the United States Army and the United States of America.

2.—At approximately 7:00 A.M. on said date, the aforesaid Samuel B. Potter was operating a government vehicle under the color of his authority and within the scope of his employment on Highway 866 in the Commonwelath of Puerto Rico.

3.—At the aforesaid time and date, while driving the army vehicle on said highway from Cataño toward Sabana Seca, Samuel B. Potter lost control of the vehicle, because of the speed at which he was traveling. The vehicle swerved off the left hand shoulder of the road into a clump of bamboo, swerved back around a curve in the roadway and finally came to rest after striking some trees off the right hand shoulder of the road.

4.—When the vehicle went off the roadway and into the bamboo, it struck Gregorio Silva Dávila, who was at the time working.

5.—The sole cause of the accident was the negligence of Samuel B. Potter, in driving the vehicle at an excessive rate of speed and in failing to keep it under control.

6.—After the occurrence, Samuel B. Potter, instead of going to the aid of the injured Gregorio Silva Dávila, rushed into the tall grass at the side of the road and hid until discovered.

7.—Other users of the highway that arrived at the scene immediately after the occurrence came to the aid of both victim and driver.

8.—The injured, Gregorio Silva Dávila, was driven to his home, where his concubine, Juana Rosa Rivera, and two of his children mounted the vehicle and were driven to the Public Health Center in Cataño. From Cataño they were transported by ambulance to the University Hospital in Rio Piedras. During both of these trips the injured showed signs of consciousness, pain, and an awareness of

the seriousness of his injuries and the imminence of death.

9.—As a result of the accident, Gregorio Silva Dávila sustained a fracture of the right femur, a basal skull fracture that extended from the right temporomandibular area around the bottom circumference of the skull into the left temporo-mandibular area. These injuries to the cranial area occasioned extensive hemorrhaging in the subdural and subarachnoid areas of the brain and the pressure on the brain affected the centers of respiratory control permitting the onset of pulmonary emphysema and pneumonia which were the immediate causes of death.

10.—From the time of his admission to the University Hospital, until his death two days later, there is no evidence that Gregorio Silva Dávila was conscious or that he suffered.

11.—At the time of his death, Gregorio Silva Dávila was 51 years old and from all the evidence appeared to be in excellent health. He earned $20.00 a week plus the use of a rent free home and the benefit derived from growing minor crops and livestock on ¾ of an acre of land. I find that the reasonable value of his gross earnings were $1,600.00 a year. There was insufficient evidence to conclude that his earning potential was higher that his actual earnings.

12.—Ninety (90) percent of the deceased's earnings was used for the support and maintenance of his dependents, and only ten percent was spent upon himself and his personal needs.

13.—According to the official life tables prepared by the Department of Health of the Commonwealth of Puerto Rico, the deceased had a life expectancy of nearly 26 years at the time of his death. However, the 1958 C.S.O. tables used by life insurance companies in Puerto Rico reflect a figure of only 22 years and that is the figure adopted by the Court. On the other hand, it cannot be assured that the deceased might have worked after the age of 65 years, despite the evidence of his good health. Using the formula of:

"what sum invested the day of decedent's death and discounted at three (3%) percent would produce an income of $1,440.-00 each year and leave a balance of zero," the actuary, presented on behalf of the plaintiffs, testified that under the 22 year base it would be slightly less than $22,-000.00 and on the 14 year base, it would be slightly in excess of $14,000.00.

The three-percent discount is adopted by the Court in view of the deceased's earning power and educational level. Balancing the probabilities the Court finds that the sum of $16,000.00 reasonably reflects the pecuniary loss occasioned by the death of the decedent.

14.—Under the law of Puerto Rico, each of the individual plaintiffs herein has a claim for relief for mental anguish, independent of the pecuniary loss he may have sustained. Juana Rosa Rivera's mental anguish was intense as a result of the shock of her loss and of seeing the deceased in such terrible physical pain, she herself became ill and required medical assistance. Although it is difficult to assess damages for mental anguish, it is concluded that a reasonable compensation for her mental anguish is $4,000.00. The Court finds that reasonable damages for the other individual plaintiffs is $2,000.00 each.

15.—Juana Rosa Rivera is also entitled to damages for loss of companionship, society and consortium. Considering her age, her dependence upon the deceased, the loneliness she must face as her children grow older and marry, the Court assesses damages for this item in the amount of $12,000.00.

16.—The minor plaintiffs were also dependent upon Gregorio Silva Dávila for tutelage and guidance. The evidence indicates that he raised these children to be God-fearing useful citizens and at a personal sacrifice kept them in school to achieve a higher education. The Court fixes these damages in the sum of $1,000.-00 for Ana Elsa Silva Rosa and $3,000.00 each for Efrain Silva Rosa, Wilfredo de Jesús and Nelson de Jesús.

17.—For the conscious pain and suffering of the decedent, I find that the heirs are entitled to damages. Although the deceased lived for more than two days, the evidence indicates he was not conscious nor did he suffer more than four or five hours. The evidence indicates that his pain was excruciating and that he was aware of the imminence of his death. For these damages to the decedent, the Court awards the heirs $2,500.00 to be divided equally among the five children, Cruz María Silva, Gregorio Silva Rosa, Ana Vitalia Silva Rosa, Ana Elsa Silva Rosa, and Efraín Silva Rosa.

18.—The Court finds that of the $16,000.00 pecuniary loss heretofore found, the plaintiff Juana Rosa Rivera is entitled to $8,000.00, and the plaintiff Efraín Silva Rosa is entitled to $3,500.00, the plaintiffs Wilfredo de Jesús and Nelson de Jesús are entitled to $1,750.00 each and the plaintiff Ana Elsa Silva Rosa is entitled to $1,000.00. The other plaintiffs are not entitled to share in this award of pecuniary loss because the evidence clearly demonstrated that they were not dependent upon the deceased.

19.—The plaintiffs have also sought damages for attorneys' fees. If a private party were the defendant herein, the argument might be valid. However, in view of the prohibition of 28 U.S.C.A. § 2412(c), the Court finds that plaintiffs are not entitled to attorneys' fees.

20.—The defendant has conceded, that if liable, it must reimburse the State Insurance Fund in the amount of $8,105.28.

To recapitulate the damages, the Court finds:

| | |
|---|---|
| Joaquín Gallart Mendía, as Manager of the State Insurance Fund | $ 8,105.28 |
| Juana Rosa Rivera | 24,000.00 |
| Efraín Silva Rosa | 9,000.00 |
| Wilfredo de Jesús | 6,750.00 |
| Nelson de Jesús | 6,750.00 |
| Gregorio Silva Rosa | 2,500.00 |
| Ana Vitalia Silva Rosa | 2,500.00 |
| Cruz María Silva Rosa | 2,500.00 |
| Ana Elsa Silva Rosa | 4,500.00 |

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and subject matter, 28 U.S.C.A. § 1346(b) and 28 U.S.C.A. § 2671 et seq.

2. The liability of the defendant, United States of America, must be determined as if it were a private person under the law of the Commonwealth of Puerto Rico.

3. The defendant is liable for all damages caused by its employee in the scope of his employment.

4. Samuel B. Potter, defendant's employee, caused the damage by his fault and negligence.

5. Under the law of the Commonwealth of Puerto Rico, a person, who by an act or omission causes damage to another through fault or negligence, shall be obliged to repair the damage so done. 31 L.P.R.A. § 5141.

6. The decedent, Gregorio Silva Dávila, was not concurrently negligent.

7. In actions for wrongful death damages are recoverable for pecuniary loss, loss of society and companionship, loss of services and mental or moral suffering.

8. The issue of whether the heirs are entitled to recover damages for the con-

scious pain and suffering of the decedent during his lifetime has never been decided by the Supreme Court of Puerto Rico. (Hernández v. Fournier, 1957, 80 P.R.R. 94; Travieso v. Del Toro, 1953, 74 P.R.R. 940). What would the Supreme Court of Puerto Rico decide if squarely faced with the problem, must be decided by this Court. The decedent, had he lived, would have been able to sue, and if after instituting suit he later died, his heirs would then have a right to be substituted in his stead. Puerto Rico Railway, Light & Power Co. v. District Court, 1928, 38 P.R.R. 305.

There seems to be no reason in law or logic why the heirs cannot recover in a situation like this. The Supreme Court of Puerto Rico in Hernández v. Fournier, supra, F.N. 1, pp. 97–98, cited the judgment of February 17, 1956 of the Supreme Court of Spain where this precise question was discussed. See (c) at p. 98. See also F.N. 3 of the same case at p. 103. .(See further Alfonso García Martínez, Revista del Colegio de Abogados de Puerto Rico, Vol. 15, Núm IV, October 1955 and Vol. 17 No. VII, August 1957).

The problems foreseen in Travieso v. Del Toro and Hernández v. Fournier, supra, are problems that have been alleviated in part by amendments to the Rules of Civil Procedure. In each case it is a question of fact whether the decedent's death was simultaneous or whether he suffered. The Court must make its determination on the evidence. The fact that only the heirs are entitled to this item of damages creates no conflict or confusion.

In view of the dicta in Hernández v. Fournier, supra, the general trend of the decisions of the Supreme Court of Puerto Rico, the liberal amendments to the Rules of Civil Procedure, the decision in Puerto Rico Railway Light & Power Co. v. District Court, supra and the general oversiding considerations embodied in 31 L.P. R.A. § 7, lead the Court to conclude that the Supreme Court of Puerto Rico would permit such damages.

9. The plaintiffs are not entitled to attorneys' fees. 28 U.S.C.A. § 2412(c).

10. Judgment should be entered in favor of the plaintiffs for the amounts set forth herein.