457 P.2d 348

Melanie LUECK, surviving widow of William T. Lueck, deceased, and William C. Lueck and Ada D. Lueck, surviving parents of William T. Lueck, deceased, Petitioners,

v.

The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF COCHISE, and the Honorable Lloyd C. Helm, Judge, and Southern Pacific Company, a corporation, Real Parties in Interest, Respondents.

No. 2 CA–CIV 697.

Court of Appeals of Arizona.

July 17, 1969.

Rehearing Denied Sept. 5, 1969.
Review Denied Oct. 21, 1969.

Barber & Haralson, by Dale Haralson, Tucson, for petitioners.

Bilby, Thompson, Shoenhair & Warnock, by Richard M. Bilby and T. Scott Higgins, Tucson, for respondent, Southern Pacific Co.

MOLLOY, Chief Judge.

This court has issued a writ of certiorari to review the propriety of a denial of a motion to file an amended complaint in a wrongful death action. The motion seeks to add the surviving parents of the deceased as additional named beneficiaries to a complaint filed by the surviving widow of the deceased for herself and two surviving minor children. The trial court denied the motion to amend because it was of the opinion that surviving parents are not heirs of a deceased child when there is either a surviving spouse or a surviving child and that, hence, they are not beneficiaries under our Wrongful Death Act.

We are presented purely with a problem of statutory construction. . At common law there was no right of action for wrongful death. Estate of Lister, 22 Ariz. 185, 187, 195 P. 1113 (1921); Baker v. Bolton, 1 Camp. 493, 170 Eng.Rep. 1033 (1808); and *see* Malone, The Genesis of Wrongful Death, 17 Stan.L.Rev. 1043 (1965). The controlling statutes in this state are:

"§ 12–611.

"When death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under such circumstances as amount in law to murder in the first or second degree or manslaughter."

"§ 12–612.

"A. An action for wrongful death shall be brought by and in the name of the surviving husband or wife or personal representative of the deceased person for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate.

"B. The father, or in the case of his death or desertion of his family, the mother, may maintain the action for death of a child, and the guardian for death of his ward.

"C. The amount recovered in an action for wrongful death shall be distributed to the parties provided for in subsection A and in the proportions provided by law for distribution of personal estate left by persons dying intestate.

"D. The term 'personal representative' as used in this section shall include any person to whom letters testamentary or of administration are granted by competent authority under the laws of this or any other state. The action for wrongful death may be maintained by any such personal representative without issuance of further letters, or other requirement or authorization of law."

"§ 12–613.

"In an action for wrongful death, the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default. The amount recovered in such

action shall not be subject to debts or liabilities of the deceased, unless the action is brought on behalf of the decedent's estate."

In its response to the petition for special relief filed in this court, the Southern Pacific Company has taken the written position [1] that the above-quoted provision that damages " * * * shall be *distributed to the parties provided for in subsection A and in the proportions provided by law for distribution of personal estate left by persons dying intestate*" is controlling.

We have two different statutes pertaining to intestate succession of personal property when there is a surviving spouse. The first, A.R.S. § 14–201, applies to *separate* estate, and under it personal property is distributed two thirds to the surviving children and one third to the surviving spouse. The other, § 14–203, applies to *community* property. Under it, one half of the property goes to the surviving spouse and the other half to surviving children, if any. Under either statute, these parents would take nothing as heirs of their deceased son.

■ The Wrongful Death Act, as any other legislation, must be construed so as to relate the component parts to one another, and give all language a reasonable meaning if possible. Stuart v. Winslow Elementary School District No. 1, 100 Ariz. 375, 414 P.2d 976 (1966). At time of oral argument in this court, the respondent Southern Pacific Company acknowledged that there was an inconsistency between the provisions of A.R.S. § 12–612, subsec. D, *supra*, calling for distribution according to the laws of intestate succession, and the provision of § 12–613 that " * * * the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover * * * "

In Boies v. Cole, 99 Ariz. 198, 203, 407 P.2d 917, 920 (1965), our Supreme Court construed this last provision:

"Thus, the compensation which is to be awarded under the 1956 amendment [the Wrongful Death Act as it is quoted *supra*] is *measured by the injury to the surviving parties*. The measure of damages is no longer limited to pecuniary damages, but also includes allowance for such things as loss of companionship, comfort and guidance." (Emphasis added)

*99 Ariz. at 203, 407 P.2d at 920.*

This court also sees an inconsistency between these provisions. It is hard to believe that the legislature intended for the jury to give to the surviving beneficiaries damages measured by the respective injuries sustained by reason of a wrongful death, and then to give these damages to those who would take according to the laws of intestate succession. One can call to mind an infinite variety of situations which demonstrate the absurdity of such a construction. If, for instance, a deceased left ten children, with one being an infant totally dependent upon the deceased, and the other children being adults with no financial dependency upon the deceased, a literal reading of the subject statutes would require the court to solemnly assess the damage for the minor child and then award nine tenths of this amount to persons who suffered no substantial loss. The net effect of any such construction is to cause some persons to profit from another's suffering.

Such a construction should not be afforded unless there is no other reasonable interpretation. Our Supreme Court has indicated that, when literal reading of a statute results in an " * * * absurd and ludicrous situation," the literal reading of a statute must yield to a more reasonable interpretation. Mayor & Common Council of City of Prescott v. Randall, 67 Ariz. 369, 377, 196 P.2d 477, 482 (1948). In the *Rand-*

---

1. At time of oral argument, this position was all but abandoned in favor of an argument based on the use of the word "or" in A.R.S. § 12–612, subsec. A, which argument is subsequently discussed.

*all* case, the following provision in the 1939 Code was held to have been impliedly repealed:

"In addition to the license, taxes, and regulations herein provided for, incorporated cities and towns, shall have the power to license, tax, and regulate the manufacture, sale, possession, and disposal of spirituous liquors, within their corporate limits, providing the foregoing provisions shall not apply to wholesalers licensed under section 5 [§ 72–110]; provided this section shall not be construed to give to incorporated cities and towns, the power to prohibit the manufacture, sale, and disposal of intoxicating liquors."

A.C.A.1939 § 72–112.

This section, our Supreme Court observed, was a carry-over from the 1935 Liquor Code, as established by Ch. 46 of the Laws of 1935, in which Act the above-quoted provision constituted § 7. When the 1939 Liquor Code was adopted by Ch. 64 of the Laws of 1939, there was no amendment made to this particular section of the code, though most of the other provisions were specifically amended. Nevertheless, our Supreme Court could see no reasonable way to give the carry-over statute efficacy, in view of the provisions of the 1939 Act vesting control of the dispensation of spirituous liquors in a State Department of Liquor Licenses and Controls.

In the statutes now before this court for construction, the language, which by literal construction leads to foolish results, is a carry-over from previous law.[2] Under the old law,[3] recovery was for the benefit of the decedent's estate and was assessed solely upon the basis of probable accumulations

in that estate. Arizona Binghampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P. 538, 44 A.L.R. 881 (1921); and *see* Downs v. Sulphur Springs Valley Electric Coop., 80 Ariz. 286, 297 P.2d 339 (1956). As to such damages, the provision for intestate succession is understandable. Under our new Act, it could still be applied with rationality to a recovery for punitive damages, *See* Boies v. Cole, *supra,* or when there are no survivors of the designated classes, *see* A.R.S. § 12–612, subsec. A, *supra.* But to apply it to the distribution of damages awarded for actual injury does violence to concepts of fundamental justice.

The unreasonableness of distributing damages computed on actual loss to the survivors according to the laws of intestate succession has been noted by many courts, *see* Annots., 14 A.L.R. 516, 520, supplemented 112 A.L.R. 30, 32, and supplemented 171 A.L.R. 204, 206. Many of these courts have nevertheless distributed such damage in literal compliance with similar statutes. *See* Annots., *supra,* and Peugh v. Oliger, 233 Ark. 281, 345 S.W.2d 610 (1961); Fussell v. Douberly, 206 So.2d 231 (Fla. App.1968); Holmes v. Price, 186 Kan. 623, 352 P.2d 5 (1960).

At least three courts have taken what we consider to be a more enlightened approach. A Nebraska statute, Rev.St.1913, § 1429, provided that wrongful death actions should be brought in the name of the personal representative of the deceased " * * * for the exclusive benefit of the widow or widower and next of kin * * " The damages awarded were to be those "sustained" by the beneficiaries, and " * * the avails thereof shall be paid to and distributed among such persons *in the same proportions as the personal property of an intestate under the inheritance laws."*

---

2. The comparable language in the 1939 Code was as follows:
   " * * * and the amount recovered in every such action shall be distributed to the parties and in the proportions provided by law in relation to the distribution of personal estate left by persons dying intestate."
   A.C.A.1939 § 31–102.

3. This prior law was in effect from 1901 to 1956. The Revised Statutes of 1901, §§ 2764 through 2767, amended the Wrongful Death Act previously existing, which had been adopted by the Revised Statutes of 1887, §§ 2145 through 2155.

(Emphasis added.) Laws 1919, c. 92. *See* In re Lucht's Estate, 139 Neb. 139, 296 N. W. 749, 750 (1941). *Lucht* decides that a father, though an heir at law of his deceased son, could not share in a death recovery because he suffered no "pecuniary loss." Under *Lucht's* holding, the entire death recovery went to the mother, to whom custody of the child had been awarded in a divorce decree:

"In the phrase 'shall be paid to and distributed among such persons,' the words 'such persons' can logically only mean those persons in whose behalf the action is brought, namely, that portion of the potential beneficiaries of the act as are damaged. We hold that the amount recovered by the personal representative of a deceased, under the provisions of section 30–810, Comp.St.1929, as amended by chapter 92, Laws 1919, shall be paid to and distributed among such of the widow, widower and next of kin of such deceased as suffer a pecuniary loss by the death of such deceased. The amendment of 1937, heretofore mentioned, seems to be in harmony with this holding."

296 N.W. at 752

*Lucht* is followed and explained in Tate v. Barry, 144 Neb. 517, 13 N.W.2d 879 (1944), which makes it clear that wrongful death damages, under this statute, are to go only to those injured, according to the " * * * pecuniary loss and the extent thereof * * *," as determined in the probate court. 13 N.W.2d at 883.

The California Supreme Court, In re Riccomi's Estate, 185 Cal. 458, 197 P. 97, 14 A.L.R. 509 (1921), was presented the problem of construing its wrongful death statute, then § 377 of the Code of Civil Procedure of California, which gave the right to recovery to the " * * * heirs or personal representatives * * *" of the deceased. There was no express provision for distributing any damage recovered. The contention was made that, inasmuch as the statutory beneficiaries were the "heirs," the statute of intestate succession should control, as had been expressly provided in the previous code.[4] In rejecting this possible construction, the court said:

"How perfectly absurd it would appear to be to hold that where the whole amount of a recovery is given solely on account of the pecuniary injury to the surviving wife, one-half thereof must go to a surviving father or mother or brother or sister of decedent who has suffered no pecuniary injury whatever. Yet such would be the effect of appellant's construction of the section."

197 P. at 98.

The holding of *Riccomi* is that the recovery in a wrongful death action should be given to those whose loss forms the basis for the recovery. 197 P. at 99.

The Oklahoma Supreme Court, in Hurley v. Hurley, 191 Okl. 194, 127 P.2d 147 (1942), was faced with the problem of construing the following statutory law:

"When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter * * *. The damages must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin; *to be distributed in the same manner as personal property of the deceased.*" (Emphasis added)

12 Okl.St.Annot. § 1053.

In refusing to apply intestate succession laws to the recovery for wrongful death, the Oklahoma Supreme Court said:

"To construe section 1053 as fixing the amount to which each of the next of kin is entitled to be that amount which he would receive under the law of descent would necessitate giving the word 'manner' the same meaning as 'proportion', and to do so would frequently result in injustice and absurdity, since it would often require a distribution wholly at

---

4. Stats.Calif.1862, p. 448, cited in *Riccomi*, 197 P. at 99.

**166**

variance with the pecuniary loss sustained by the respective next of kin." 127 P.2d at 151.

These three decisions breast the wind (*see* A.L.R.Annots., *supra*), and were we wont only to follow "majority" law, we would lamely declare here that the plain legislative intent is that damages based on one man's suffering be paid to another's profit. But, the lodestar of statutory construction is to determine the real intent of the legislature. State v. Locks, 94 Ariz. 134, 382 P.2d 241 (1963). Good sense, and our own legislative history, tell us that this is an instance of misplaced verbiage. In so concluding, we are influenced partially by the constitutional argument that is made.

■ It is a well-established principle of construction that statutes are to be construed in such way as to render them constitutional, if this be reasonably possible. Arizona Podiatry Ass'n v. Director of Insurance, 101 Ariz. 544, 422 P.2d 108 (1966). Our Supreme Court has said that legislative inequality must have " * * some relation to the purpose sought to be achieved * * * " Killingsworth v. West Way Motors, Inc., 87 Ariz. 74, 79, 347 P. 2d 1098, 1101 (1959). Giving this statute its literal meaning, we believe there is a serious question as to whether there is any rational basis for the inequalities that would result. Why should, for instance, in the hypothesized instance, an infant son, who happens to have nine siblings, receive less compensation for his injury than an infant similarly situated who has no brothers and sisters? It is certainly only a matter of degree between the unfairness of such a distinction, and the distinction made between legitimate and illegitimate children in the wrongful death statute of Louisiana, which was struck down as a violation of Equal Protection in Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968).

We have previously grappled with this same constitutional attack upon this statute when raised only by the defendant. Salinas v. Kahn, 2 Ariz.App. 181, 407 P.2d 120 (1965). In that decision we indicated that before finally passing upon the contention there must be a contest between interested beneficiaries, and that the defendant's only concern as to constitutionality was whether the method of measuring damages would withstand attack. We indicated, however, that, rather than declare this statute void, we would follow the line of reasoning employed in *Randall* to declare that the intestate succession provisions were inadvertently carried over from the 1939 Code and were *not* intended to apply to a situation where the jury should "give" damages "to" the surviving parties in proportion to the injuries actually sustained. 2 Ariz.App. 193–194, 407 P. 2d 120.

Since our expressions in *Salinas*, there has been a pronouncement by our Supreme Court which points in the same direction. In re Estate of Milliman, 101 Ariz. 54, 415 P.2d 877 (1966), states:

"In A.R.S. 12–612, adopted in 1956, we have re-enacted the substance of the provisions making the action for the benefit of the surviving husband, wife, children, and parents, as found in the 1887 statute." 101 Ariz. at 61, 415 P. 2d at 884.

■ It is clear that under the 1887 statute, the loss was apportioned among all of the designated survivors (" * * * surviving husband, wife, children and parents * * * "),[5] *including the parents,* regardless of whether there was a spouse and/or children surviving. *See* Southern Pacific Co. v. Tomlinson, 4 Ariz. 126, 33 P. 710 (1893), *reversed,* 163 U.S. 369, 16 S. Ct. 1171, 41 L.Ed. 193 (1896). Being here squarely presented with the problem stepped over by *Salinas,* we adopt the view that the intestacy succession provision has no application to compensatory damages awarded to the surviving spouse, children or parents under our 1956 Wrongful Death Act.

5. From Rev.Stat.Ariz.1887, § 2149.

■ Once the language requiring distribution by the laws of intestacy is put in proper context, we see no grounds for holding that parents have no interest in a death action, merely because the deceased has a surviving wife or a child. The remaining language in our Act which is now[6] relied upon by the respondents to reach such a result is the provision that:

"An action for wrongful death shall be brought by and in the name of the surviving husband or wife or personal representative of the deceased person for and on behalf of the surviving husband or wife, children *or* parents, or if none of these survive, on behalf of the decedent's estate." (Emphasis added)

The contention is made that, because the disjunctive "or" is used as the connection between these various classifications, if there is a surviving spouse or a child, any loss that the parents might have sustained would go uncompensated. Such a construction, again, leads to gross inequality. It would deny compensation to parents who have been solely supported by their deceased son, merely because he had an estranged wife, whose fondest wish may have been fulfilled by his demise.

The cases are a legion which attribute to the word "or" the meaning of "and," or "either or all" when this is the more reasonable construction in the context at hand. Elquest v. City of Phoenix, 68 Ariz. 277, 279, 204 P.2d 1061, 1063 (1949); Shumway v. Farley, 68 Ariz. 159, 165, 203 P.2d 507, 511 (1949); and *see* 67 C.J.S. or pp. 517–518.

The construction proposed by Southern Pacific, under accepted grammatical rules, would require that there be a selection of *one* of these alternative classes (the surviving spouse, children *or* parents) on criteria not expressed in the statute. If the word "or" is being used as a true disjunctive in this series, it connects all three of these classes.[7] Hence, under this construction, if there were a surviving spouse *and* children, and if the court is to arbitrarily select the first-mentioned as being the criterion of preference, then the surviving children would take nothing and the surviving spouse would take all. Even the respondent disclaims such a construction.

This "or" will simply not stand the weight the respondent wants it to bear. We believe we more correctly interpret the legislative intent by giving the meaning of "and" to this linkage.

■ Conceiving that the petitioning parents are beneficiaries under our Wrongful Death Act, it is our view that the denial of the petition to amend was an abuse of discretion which should be corrected at this juncture. If it be error to exclude these petitioning parents as beneficiaries, then a trial of this wrongful death action in their absence may result in wasted judicial effort. *See* Cross v. Pacific Gas and Electric Company, 60 Cal.2d 690, 36 Cal.Rptr. 321, 388 P.2d 353 (1964); Watkins v. Nutting, 17 Cal.2d 490, 110 P.2d 384 (1941). It is appropriate to correct such fundamental interlocutory error by special writ. Dean v. Superior Court, 84 Ariz. 104, 324 P.2d 764, 73 A.L.R.2d 1 (1958); Phelps Dodge Corp. v. Superior Court, 7 Ariz.App. 277, 438 P.2d 424 (1968); Industrial Commission v. Superior Court, 5 Ariz.App. 100, 423 P.2d 375 (1967).

The order denying motion to amend is reversed.

HATHAWAY and KRUCKER, JJ., concur.

---

6. *See* n. 1, *supra.*

7. From Webster's New World Dictionary of the American Language, College Edition, 1968, the alphabetical entry for *or*: "a coordinating conjunction introducing an alternative: specifically  *  *  *  (b) introducing any of the choices in a series, but usually used only before the last: as, apples, (*or*) pears, (*or*) peaches, *or* plums."

See also Sweet, A New English Grammar: Logical and Historical, Part I (Oxford 1955), p. 195.