458 P.2d 361

The CITY OF TUCSON, a municipal
corporation, Appellant,

v.

Jennie WONDERGEM, surviving spouse of
Peter Wondergem, deceased, Appellee.

No. 2 CA–CIV 647.

Court of Appeals of Arizona.

Sept. 8, 1969.

Rehearing Denied Oct. 10, 1969.
Review Granted Nov. 18, 1969.

—————◇—————

Enos P. Schaffer, City Atty., City of
Tucson, by Frederick S. Dean, Asst. City
Atty., for appellant.

Rees, Estes & Browning, by William
D. Browning, Tucson, for appellee.

MOLLOY, Chief Judge.

This is a second appeal from a wrong-
ful death action brought against the City
of Tucson for a death arising out of the
flooded condition of a public street after
a heavy rain on October 22, 1961. Pre-
viously, this court, City of Tucson v.
Wondergem, 6 Ariz.App. 570, 435 P.2d 77
(1967), affirmed the granting of a new
trial for the reason that an "act of God"
instruction was given in the first trial.

On retrial, a substantial judgment was
rendered in the plaintiff's favor and this
appeal questions whether it was proper to

give a "sudden emergency" instruction, whether it was proper to instruct the jury that the deceased was presumed to have exercised due care for his own safety, whether it was proper to permit in evidence testimony regarding funeral expenses, whether it was error to withdraw from the jury the defense of assumption of risk, and whether it was error to permit testimony of the surviving widow's mental suffering and illness and to instruct the jury that it could consider in its award the "anguish, sorrow, stress, mental suffering, pain and shock" of the surviving widow resulting from the death of her husband.

The facts developed at the second trial are substantially the same as those established at the first. The street in question is a north-south one, which crosses the Tucson Arroyo, a natural drainage channel flowing northwest. On the occasion in question, at the time of the peak flow at 10 p. m., the arroyo was carrying 5,000 cubic feet per second of water, while the conduit underneath the roadway had a maximum capacity of 2,500 cubic feet per second. The excess water flowed over the top of the paved road in a southeast to northwest direction. The principal flow across the highway was above the bridge over the arroyo, but there was water flowing diagonally across the road both north and south of the bridge. One witness testified that he crossed in this area at about 9:30 p. m., when there was approximately four to five hundred feet in horizontal expanse of water flowing across the road in depths ranging from zero to one and a half feet. At the time this occurred, the deceased's automobile had not as yet become stranded in this water.

At 9:38 p. m., on this evening, the deceased was seen standing on the hood of his 1959 Plymouth automobile approximately 35 to 40 feet south of the south end of the bridge, with his car pointing eastward. His rear wheels were off the pave-

ment on the west side of the road. The deceased was smoking a cigarette at the time. Though his car was surrounded by water, it was not in the main flow of the current. The water rose rapidly between 9:30 and 10·p. m. By 10 p. m., this car had been pushed by the flow of the water to within 12 to 14 feet of the bridge and the deceased's car had been turned upside down by the current. At this time, deceased was standing on the top of the underside of his car. A policeman (Clark) walked out on the bridge, and, holding onto the railing, extended a foot towards the deceased, inviting him to grab hold with the intent of trying to pull the deceased to safety. According to this policeman, the deceased appeared frightened, and did not jump. Shortly thereafter both the deceased and his car were washed past the bridge and down into the arroyo where they disappeared in the torrent. The deceased's body was recovered later several miles downstream.'

## SUDDEN EMERGENCY INSTRUCTION

■ Over the defendant's objections, a "sudden emergency" instruction was given. We find no error in this ruling. While this instruction has been criticized as being "argumentative" [1], and while no case has been called to our attention in this jurisdiction in which the *refusal* to give this instruction was held to be reversible error, our Supreme Court has approved the *giving* of the instruction when, taking the facts most favorably to the giving of the instruction, there is evidence of a sudden "crisis". Gilbert v. Quinet, 91 Ariz. 29, 33–34, 369 P.2d 267, 270 (1962). Under this holding, we believe that, at least at the time that Officer Clark was extending his foot on the southwest edge of the bridge, there was something that might be called a sudden emergency. Up until shortly before this, the situation of the deceased was not obviously critical.

I. See Illinois Pattern Jury Instructions Civil § 12.02 (1961), and Molloy, Arizona Jury Instructions, 6 Ariz.L.Rev. 27, 35–36 (1964).

The development of this crisis which threatened death or serious bodily injury could by reasonable persons be regarded as "sudden". At this moment, the deceased had the choice between jumping and staying with his vehicle. He was obviously frightened. The instruction may have assisted the jury in determining whether he was negligent at that moment. *See* Fulton v. Johannsen, 3 Ariz.App. 562, 564–565, 416 P.2d 983, 985–986 (1966).

## INSTRUCTION ON PRESUMPTION OF DUE CARE

■ Over objection, the court gave the following instruction:

"If you find that there is no credible evidence on the question of whether the deceased in this case exercised due care for his own safety just before he was killed, then you must presume that he did exercise due care. The law presumes that the deceased did exercise due care unless the contrary is made to appear."

We agree with the appellant that the giving of this instruction was error, but we find no prejudice. We have recently dealt with this same problem in Kovrig v. Vasquez, 10 Ariz.App. 101, 456 P.2d 947 (1969). In that case, we decided that the giving of this instruction, when there is evidence of contributory negligence, is error, because under our law this presumption is regarded as one of the " 'bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts.' " Seiler v. Whiting, 52 Ariz. 542, 549, 84 P.2d 452, 455 (1938).

However, the instruction does not inject any new theories into the case, but merely repeats a standard instruction, given in this case, that the burden of proof to show negligence is upon the party asserting it. Hence, we refuse to reverse for this error.

## EVIDENCE REGARDING FUNERAL EXPENSES

■ Though there is a diversity of authority, the majority view appears to be that there may be recovery for funeral expenses in a wrongful death action. *See* Annot.,

3 A.L.R.2d 932. On appeal, the appellant does not question this majority law, but complains there was no evidence here that the plaintiff was liable for the expenses incurred or that plaintiff had paid them. However, the City did not object to the evidence as it came in upon this grounds, nor did it raise this objection at the time of trial. Hence, this objection, upon which it now predicates this appeal, is waived. Milam v. Milam, 101 Ariz. 323, 419 P.2d 502 (1966).

## ASSUMPTION OF RISK

■ We see no evidence which necessarily leads to the conclusion that the deceased assumed the risk of his own injury and hence find no error in the refusal to give an assumption of risk instruction. While the deceased may have been faced with a situation that should have given warning that his engine might drown out in going down this street, it is pure speculation to say that he realized that any condition created by the defendant created a risk of serious bodily injury or death and that he accepted this condition willingly.

The deceased was a long-time resident of Wisconsin and had come to Arizona approximately sixteen months prior to his death. There is no showing that he had ever experienced a flash flood such as we have in Arizona. It was night when he came upon this situation; the street was unlighted and without flare pots or barricades. The evidence would indicate that the deceased was traveling from south to north when his car became flooded out and that this happened before he came into the area where the water was running the fastest. All witnesses who testified in this case, most of whom were long-time residents of Tucson, indicated that the situation was deceiving and that, unless one knew the particular road, there would be no way to realize the depth of the water until one got into it. There is no evidence that the deceased ventured out into these waters as a thrill seeker or that he

in any way approved of the condition that resulted in his death.

In City of Tucson v. Holliday, 3 Ariz. App. 10, 411 P.2d 183 (1966), this court said:

> "We hold that [before there is sufficient evidence to submit issue of assumption of risk to the fact finder] there must be some element of acceptance of the defendant's negligence which indicates a willingness on the part of the plaintiff to take his own chances as far as the particular risk created by such negligence is concerned."

3 Ariz.App. at 17, 411 P.2d at 190.

In *Holliday*, we quoted with approval from Terry v. Boss Hotels, Inc., 376 S.W. 2d 239, 248 (Mo.1964):

> " 'The circumstance in which reliance on the doctrine of assumed or incurred risk will be approved are exceptional.' "

3 Ariz.App. at 18, 411 P.2d at 191.

As in *Holliday*, we distinguish the fact situation here from cases like Miller v. George F. Cook Construction Co., 91 Ariz. 80, 370 P.2d 53 (1962), by reason of the lesser apparency of the risk. We hold that the trial court was within the bounds of its discretion in refusing to give an assumption of risk instruction.

## EVIDENCE AND INSTRUCTIONS ON MENTAL SUFFERING OF THE WIDOW[2]

Over an objection of irrelevancy, the plaintiff was permitted to show that, commencing in March of 1963 (approximately a year and a half after the death of her husband), she was hospitalized on three occasions for an emotional condition; that she has been treated by a psychiatrist since January of 1964; that she had incurred hospital bills for treatment of her emotional problems in the sum of approximately $2,350; that, since her hospitalizations, she

had been placed in a rest home where her cost of keep was $233 per month plus monthly costs of medicine of $15 per month. Her treating psychiatrist diagnosed her condition as "psychotic depressive reaction" caused by the death of her husband and that, though she was fairly well recovered at the time of his testimony, he anticipated there would be further relapses and a continuing need for psychiatric treatment.

Over the objection of the defendant, the jury was told that, in the event that it found in favor of the plaintiff, it could consider " * * * as bearing upon the amount of your verdict, any anguish, sorrow, stress, mental suffering, pain and shock which from the evidence, the death of Peter Wondergem may have caused his wife to suffer."

These rulings are challenged as permitting a recovery for items not within the contemplation of our Wrongful Death Act. As we have occasion to point out in a recent opinion,[3] there was no cause of action for wrongful death at the common law, Estate of Lister, 22 Ariz. 185, 187, 195 P. 1113 (1921) (citing, *inter alia,* Baker v. Bolton, 1 Camp. 493, 170 Eng.Rep. 1033 (1808), and therefore, in determining the question now before the court, we are concerned only with the matter of statutory interpretation. *See* Restatement of Torts § 925, p. 638.

The controlling statute is A.R.S. § 12-613 reading as follows:

> "In an action for wrongful death, the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default. The amount recovered in such action shall not be

---

2. The expression of opinion on these issues represents only the opinion of Molloy, J. The majority opinion of this court, joined by Krucker, J., and Hathaway, J., follows.

3. Lueck v. Superior Court, 10 Ariz.App. 161, 457 P.2d 348 (1969).

subject to debts or liabilities of the deceased, unless the action is brought on behalf of the decedent's estate."

This wrongful death action is predicated upon negligence and we believe the subject statute, by requiring that damages be those "resulting" from the death, brings into play the substantial body of law which has been developed under the label of "proximate cause", and which is closely related to the essence of what is "negligence". *See* Restatement (Second) of Torts § 281, Comments *"e"* and *"f"*, and Tucson Rapid Transit Co. v. Tocci, 3 Ariz.App. 330, 414 P.2d 179 (1966). It seems inconceivable that the legislature would intend that all damages flowing from the death, no matter how remote, should be awarded in such an action. Common sense tells us, for instance, that, if a widow were the victim of an accident while on the way to the funeral of her husband, her injuries so sustained would ordinarily not be an item of damage in the wrongful death action as to her deceased husband.

In the area of emotional distress arising from injury to another person, when the injury does not result in death, the authorities uniformly draw a line short of permitting the evidence admitted here. The pertinent law is stated in § 313 of the Restatement (Second) of Torts.

The bold-letter rule is amplified with the following Comment on subsection (2):

"Thus, where the actor negligently runs down and kills a child in the street, and its mother, in the immediate vicinity, witnesses the event and suffers severe emotional distress resulting in a heart attack or other bodily harm to her, she cannot recover for such bodily harm unless she was herself in the path of the vehicle, or was in some other manner threatened with bodily harm to herself

otherwise than through the emotional distress at the peril to her child." [4]

While this law has only collateral significance, it merits consideration, for it would be anomalous if the law were to be that an eyewitness to a severe mangling of a loved one could recover for emotional shock only if the mangling resulted in death. At least one court has been persuaded by this general tort law to deny recovery for emotional shock in a wrongful death action. *See* Oblatore v. Brauner, 283 F.Supp. 761 (W.D.Mo.1968).

When a court draws proximate cause lines, it is involved in making a policy decision. Prosser, Proximate Cause in California, 38 Calif.L.Rev. 369, 398 (1950). For the most part, this policy decision is based upon foreseeability. *See* Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 80, 441 P.2d 912, 920 (1968). In Tucker v. Collar, 79 Ariz. 141, 147, 285 P.2d 178 (1955), our Supreme Court quoted with approval from the Restatement of Torts:

"'Certain forms of conduct are negligent because they tend to subject certain interests of another to a particular hazard or type of hazard or to a limited number of hazards of a definite character. If so, the actor's negligence lies in his subjecting the other to the particular hazard and he is liable only for such harm as results from the other's exposure thereto.' Restatement, Torts, section 281, Comment *e* on Clause *b*, page 736.

"In explanation of what is meant by the foregoing quotation is this statement:

"'This follows from the rule stated in section 281, Comment *e*, which states that where the negligence of the act consists in its recognizable tendency to subject another to a particular hazard, the actor cannot be subject to liability for any harm occurring otherwise than by the

---

4. Dillon v. Legg, 68 Cal.2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968), may have chipped a piece out of the retrenchment represented by the above quote, but its holding is directed at emotional disturbance which has resulted from actually witnessing the death of a close relative.

Dillon v. Legg, 68 Cal.2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968). No case has been called to our attention which permits recovery for emotional suffering sustained by one who was not an eyewitness to physical damage inflicted on a loved one.

other's exposure to that hazard.' Restatement, Torts, section 430, Comment c, page 1159." 79 Ariz. at 147, 285 P.2d at 182.

If this general tort law is pertinent, it tells us that the zone of risk here did not include this widow who was not present at the scene, and that, as a matter of law, there can be no recovery for her anguish, sorrow and mental illness. The existing authority in wrongful death actions leads us to the same conclusion.

Boies v. Cole, 99 Ariz. 198, 203, 407 P.2d 917, 920 (1965), states that in a wrongful death action:

"The measure of damages is no longer limited to pecuniary damages, but also includes allowance for such things as loss of companionship, comfort and guidance." 99 Ariz. at 203, 407 P.2d at 920.

This language bears close resemblance to some used in Lockhart v. Besel, 71 Wash.2d 112, 426 P.2d 605 (1967), and Wycko v. Gnodtke, 361 Mich. 331, 105 N.W.2d 118 (1960). Both of these decisions overrule previous decisions limiting damages in wrongful death actions to "pecuniary" items and enlarge the scope of recovery to " * * loss of companionship * * *" (426 P.2d at 605), and to the " * * * value of mutual society and protection, in a word, companionship" (105 N.W.2d 122). Nevertheless, these decisions deny recovery for " * * * grief, mental anguish or suffering * * * *" (426 P.2d at 609), and " * * * sorrow and anguish caused by its [child's] death" (105 N.W.2d at 123).

According to a comment contained within "Damages in Wrongful Death and Survival Actions", 29 Ohio S.L.J. 420 (1968), these Washington and Michigan decisions are in line with the majority rule in this country:

"Only a few jurisdictions attempt to to compensate for the pain and sorrow the beneficiaries have suffered by reason of the decedent's death. Even those jurisdictions which are prone to

recognize the injury suffered by loss of companionship, and which struggle to reason that it is a pecuniary injury, balk at compensating for the grief of survivors. One commentator reasons that 'the distinction between the pain of a broken arm and the pain of a broken heart is judge-made * * *' but it is a distinction which almost all of the states have chosen to uphold. The reality of wounded feelings is probably as susceptible to measurement as vanished companionship, but it is not an item traditionally considered in court actions of any kind. The criticisms that might be leveled at the attempts to compensate for loss of companionship, however, are also appropriate in this area of anguish of survivors. There is probably a logical difference in that companionship focuses on the dissolved relationship while considerations of anguish concentrate on the bereaved survivor's singular suffering. Yet the difference for the purposes of measuring damages is rather artificial. Nevertheless, the majority rule abides with unwavering vigor, and it can be anticipated that it will remain firm even while these jurisdictions move steadily toward compensating for loss of companionship."

29 Ohio S.L.J. at 436–37.

Wyoming, from whence our statute was adopted in part,[5] has held that "damages as they [the jury] shall deem fair and just" does not include " * * * mental suffering of the survivors * * *", Coliseum Motor Co. v. Hester, 43 Wyo. 298, 3 P.2d 105, 111 (1931). One of the decisions relied upon and quoted by *Coliseum* is Munro v. Pacific Coast Dredging & Reclamation Co., 84 Cal. 515, 24 P. 303 (1890). This California decision, construing a statute allowing " * * * such damages as, under all the circumstances of the case, may be just," does not permit recovery for grief, sorrow and mental suffering of the survivors. This is still the law in the State of California. *See* Wil-

---

5. *See* historical note after A.R.S. § 12–611.

liams v. Dowling, 318 F.2d 642, 644 (3d Cir. 1963) (applying Calif. law).

There is, of course, the possibility that our legislature intended to go beyond the majority view in this country by the particular verbiage selected in the 1956 amendment to our Wrongful Death Act.[6] If so, it spoke in cryptic language. This court has recently struggled with correlative provisions determining the classes of survivors selected as beneficiaries under this Act. *See* Lueck v. Superior Court, 10 Ariz.App. 161, 457 P.2d 348 (1969), and Reed v. Frey, 10 Ariz.App. 292, 458 P.2d 386 (1969).

If these decisions establish nothing more, they at least indicate that the legislature cannot be commended for a careful choice of language in its adoption of the 1956 amendment. The Michigan Supreme Court in *Wycko* takes the view that problems of the nature with which we now cope should not be answered by the precise language of the particular statute, and unabashedly relies upon decisions from other states whose statutes varied from its own in verbiage. (*See* 105 N.W.2d at 119–20.)

However, if we look at the particular language used here and attempt to conjecture as to what the legislature had in mind, there are indications that again point towards a denial of recovery for mental suffering of survivors. The clause interpreted in *Lueck* sheds some light on our present problem:

"C. The amount recovered in an action for wrongful death shall be distributed to the parties provided for in subsection A and in the proportions provided by law for distribution of personal estate left by persons dying intestate." A.R.S. § 12–612.

While we have construed this provision in *Lueck* as having pertinency only to recoveries when there is no surviving spouse, child or parent, nevertheless, it

must be remembered that the legislature, without discomfiture, placed this language in this statute in such apposition that at first blush it applies to all recoveries under the Act. It is most difficult to conceive that the legislature had in mind that there would be recoveries under this Act for the mental anguish and suffering of survivors without immediately apprehending the glaring incongruity in this statute.[7]

Accordingly, I interpret this statute as not allowing recovery for anguish, sorrow, stress, mental suffering, pain and shock of survivors. It would follow that both the instruction on damages and the admission of the testimony specially directed at these noncompensable items were erroneous. These errors, in my view, probably affected the amount of the recovery allowed ($60,000) and hence a new trial on at least the issue of damage should be directed. Because my colleagues do not agree with my analysis of the mental suffering questions, there is no need to express my view as to whether a new trial should be granted on all issues, or only on that of the amount of damage.

HATHAWAY, Judge, with whom KRUCKER, Judge, joins:

■ We join in the foregoing opinion except in that portion dealing with evidence and instructions on mental suffering. In this regard, we can find no limitation in the pertinent statute, A.R.S. § 12–613, which proscribes consideration of mental anguish of the survivors. The statutory direction is that " * * * the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death * * *." We believe we would only be legislating if we were to eliminate from the jury's consideration the sorrow and grief, or, as in this case, the mental illness which proximately results to the designated classes of survivors from the wrongful death.

---

6. Ch. 46 of the 1956 laws.

7. The Wyoming court in *Coliseum* was similarly influenced by almost identical statutory language (3 P.2d at 112), but

the Wyoming court was operating under the unchallenged assumption that this provision was applicable to *all* recoveries under the Act.

The following cases, decided under comparable statutes, allow recovery for mental anguish and sorrow of survivors: Silverman v. Travelers Insurance Company, 277 F.2d 257 (5th Cir. 1960) (applying Louisiana law); Johnson v. Charleston and Western Carolina Ry. Co., 234 S.C. 448, 108 S.E.2d 777 (1959); Gallart-Mendia ex rel. Rosa-Rivera v. United States, 229 F.Supp. 284 (1964); Stamper v. Bannister, 146 W.Va. 100, 118 S.E.2d 313 (1961); and Matthews v. Hicks, 197 Va. 112, 87 S.E.2d 629 (1955).

Judgment affirmed.